996 P.2d 582 (2000)
140 Wash.2d 291
Dan DRINKWITZ, a Washington resident, and Kenneth Caproni, a Washington resident, on behalf of themselves and those similarly situated, Respondents,
v.
ALLIANT TECHSYSTEMS, INC., a foreign corporation. Petitioner.
No. 67019-6.
Supreme Court of Washington, En Banc.
Argued March 7, 2000.
Decided April 6, 2000.
*584 Perkins, Coie, Bruce Michael Cross, Kevin J. Hamilton, Seattle, Amicus Curiae on Behalf of Association of Washington Businesses.
Christine Gregoire, Attorney General, Martha P. Lantz, Asst., Olympia, Amicus Curiae on Behalf of Department of Labor & Industries.
William Rasmussen, Seattle, Robins, Kaplan, Miller & Ciresi, Thomas B. Hatch, Minneapolis, MN, for Petitioner.
Law Offices of Scott McKay, Scott J. McKay, Seattle, Sebris, Busto, Jeffrey James, Mark Busto, Bellevue, for Respondents.
*583 IRELAND, J.
This is a direct discretionary review of the trial court's summary judgment ruling. Plaintiffs, on behalf of a currently uncertified class, sued their former employer, Alliant Techsystems, Inc., to recover overtime wages under Washington's Minimum Wage Act (MWA), chapter 49.46 RCW. On cross-motions for summary judgment involving the issue of liability, plaintiffs argued they were "nonexempt" employees and, thereby, entitled to overtime pay under the MWA. The trial court granted plaintiffs' motion and denied Alliant's motion for summary judgment. In so doing, the trial court determined the issue of liability in plaintiffs' favor, certifying the issue for direct review while leaving the issue of class certification and damages for future determination.
The key issue in this direct review is whether the employer preserved the putative class representatives' "exempt" status under the MWA. Finding that some of Alliant's payroll policies and practices destroyed plaintiffs' "exempt" status because they violated the MWA's "salary basis" test, we affirm the trial court's summary judgment order and remand for further proceedings consistent with this opinion.

STANDARD OF REVIEW
When reviewing an order granting summary judgment, an appellate court reviews the matter de novo by engaging in the same inquiry as the trial court. E.g., Marquis v. City of Spokane, 130 Wash.2d 97, 104-05, 922 P.2d 43 (1996). Under this standard, the appellate court determines whether genuine issues of material fact exist and whether the moving party is entitled to judgment as a matter of law. Facts are reviewed in the light most favorable to the nonmoving party. E.g., Marquis, 130 Wash.2d at 105, 922 P.2d 43 (citing CR 56(c)). Based on this deferential standard of review, we focus on Alliant's assertions and admissions of fact.

FACTS
Alliant is a Delaware corporation, primarily engaged in the military defense industry. Alliant's national operations included its Marine Systems Division headquartered in Mukilteo, Washington. Between March 1, 1993 and March 1, 1996, Alliant employed approximately 335 individuals in Washington, who were classified as exempt "time-reporting" employees. Clerk's Papers (CP) 628, 630. These employees were subject to the various Alliant policies and practices described below.
Plaintiffs and putative class representatives, Dan Drinkwitz and Kenneth Caproni, are engineers formerly employed by Alliant's Marine Systems Division. Alliant classified both Drinkwitz and Caproni as "exempt" employees.
Alliant's Acknowledged Payroll Policies and Practices
Alliant acknowledges the following policies and practices applied to plaintiffs, notwithstanding that they were classified as "exempt" and paid on a "salary basis":
*585 1. A requirement that employees record their time and submit weekly reports.
2. A requirement that employees work the schedules established by their managers.
3. A practice of calculating and recording the monthly salaries of employees into hourly rates of pay.
4. A requirement that employees work a weekly quota of between 40 and 45 hours per week.
5. A requirement that employees "make up" the difference between the time worked and the expected workweek by one of the following:
(a) working longer hours;
(b) applying hourly credits from compensatory (comp) time banks; or
(c) deducting from earned vacation time.
6. Creation of a discipline plan which allowed management to suspend employees for one or two days when hourly quotas were not met.
7. Employee pay deductions for employees who failed to meet their quota requirements of 40-45 hours per week.
Although Alliant acknowledges that "exempt" employees' pay was improperly deducted for failing to meet workweek hourly quotas, Alliant claims this practice was inadvertent. Specifically, Alliant asserts it first received notice of this practice when Plaintiff Caproni filed an affidavit to support an action under the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201-219, brought by Alliant employees in a Rhode Island federal court in 1995.[1] Caproni's affidavit stated he had recently suffered an improper salary deduction. In response, Alliant expressed surprise to learn of Caproni's improper deduction, and to learn that the Marine System's payroll clerk who had made the deduction was unaware of the difference between "exempt" and "nonexempt" employees.[2] Between March, 1, 1993 and March 1, 1996, this payroll clerk made 243 improper deductions in 54 "exempt" employees' pay. After Alliant told the payroll clerk to stop making such deductions, all affected employees were identified and fully reimbursed in the amount of $33,691.43 by October 1996. Alliant also assured all current employees that steps had been taken to avoid similar mistakes. It is undisputed that Caproni suffered five improper deductions between March 1, 1993 and March 1, 1996, all of which were reimbursed by October 1996. It is also undisputed that Drinkwitz never suffered an improper deduction between March 1, 1993 and March 1, 1996.
Alliant admits its management adopted a special disciplinary procedure to enforce the 41-45 hour workweek which called for one- or two-day suspensions without pay. It admits that at least one, and perhaps two, employees were subject to this disciplinary procedure. Alliant claims that both employees were reimbursed for the deductions and that a memorandum was distributed to employees advising them to contact their manager if they had experienced such discipline.
Despite these admissions, Alliant asserts that its salaried employees were treated in a manner consistent with their "exempt" status. Plaintiffs disagree. Therefore, the key issue on this direct review of summary judgment is whether, when viewing the facts in the light most favorable to the employer, Alliant preserved the named plaintiffs' "exempt" status under the MWA as a matter of law.

ANALYSIS
Issue 1: What is the appropriate "salary basis" test under the MWA?
The FLSA deals with overtime and minimum wage requirements for employees. 29 U.S.C. §§ 201-219. The FLSA is intended to be a "floor" below which employers may not drop. It is not a "ceiling" on benefits *586 or terms and conditions of employment. Doctors Hosp., Inc. v. Silva-Recio, 429 F.Supp. 560, 561-62 (D.P.R.1975), aff'd, 558 F.2d 619 (1st Cir.1977). Because the MWA is based upon the FLSA, federal authority under the FLSA often provides helpful guidance. However, the MWA and FLSA are not identical and we are not bound by such authority. Chelan County Deputy Sheriffs' Ass'n v. Chelan County, 109 Wash.2d 282, 291, 745 P.2d 1 (1987); Weeks v. Chief of Wash. State Patrol, 96 Wash.2d 893, 897, 639 P.2d 732 (1982).
The MWA requires, in part, that employers pay their employees at a rate of one and one-half times their regular hourly rate for time worked beyond 40 hours per week, unless an individual is employed in a "bona fide... professional capacity." RCW 49.46.010(5)(c). Pursuant to its authority to "define and delimit" the term "professional capacity," Washington's Department of Labor and Industries (DLI) defines "professional" employees as individuals compensated for their services "on a salary or fee basis." RCW 49.46.010(5)(c); WAC 296-128-530(5). Neither the MWA nor DLI regulations define the term "on a salary or fee basis."
The only published Washington case discussing the MWA's "salary basis" requirement is Tift v. Professional Nursing Servs., Inc., 76 Wash.App. 577, 886 P.2d 1158 (1995). Tift held that an employee who qualified as an "exempt" "administrative employee" under the MWA was "in reality an hourly employee" when: (1) the employee was required to keep track of hours worked in excess of 40 hours per week; and (2) was compensated at a straight hourly rate for all work done in excess of 40 hours per week. Tift, 76 Wash.App. at 584-86, 886 P.2d 1158 (citing Hilbert v. District of Columbia, 23 F.3d 429, 440-41 (D.C.Cir.1994) (Mikva, C.J., concurring in the result in part, dissenting in part)). Shortly after Tift's publication, however, the Washington State Legislature added the following language to the MWA:
The payment of compensation or provision of compensatory time off in addition to salary shall not be a factor in determining whether a person is exempt under RCW 49.46.010(5)(c)[.]
Laws of 1995, ch. 5, § 1 (codified at RCW 49.46.130(2)(a)).
Plaintiffs and Alliant debate the effect this statutory amendment has on Tift. Alliant claims the amendment "legislatively overruled" Tift and signaled a legislative intent to rely on federal authority under the FLSA. Plaintiffs, in contrast, argue Tift's salary basis rationale still applies because the amendment represents only an evidentiary limitation.
Regardless of the statutory amendment's effect on Tift's holding, the parties' debate is of little consequence because the Legislature, by failing to define "salary basis" in the MWA, has provided no specific guidance for the issue at hand. In contrast, the federal Department of Labor's (DOL) regulations promulgated under the FLSA's authority have generally defined "payment on a salary basis" as follows:
An employee will be considered to be paid "on a salary basis"... if ... he regularly receives each pay period ... a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.... [T]he employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked. This policy is also subject to the general rule that an employee need not be paid for any workweek in which he performs no work.
29 C.F.R. § 541.118(a).
While the Legislature did not adopt the DOL's definition of "salary basis," narrowly applying this definition to the facts of this case would render a result consistent with Washington's long and proud history of being a pioneer in the protection of employee rights. Numerous statutory provisions exemplify this long and proud history. For example, 25 years before Congress passed the federal minimum wage law in 1938, the people of Washington enacted the following:
It shall be unlawful to employ any person in any industry or occupation within the state of Washington under conditions of labor detrimental to their health; and it *587 shall be unlawful to employ workers in any industry within the state of Washington at wages which are not adequate for their maintenance.
Laws of 1913, ch. 174, § 2, amended by Laws of 1973, 2d Ex.Sess., ch. 16, § 3 (codified at RCW 49.12.020). Washington has also had a law requiring an eight-hour workday since 1899. Chapter. 49.28 RCW. More recently, in response to social realities such as dual-career couples and single working parents, the Legislature enacted a family leave law in 1989. Laws of 1989, 1st Ex.Sess., ch. 11 (codified at chapter 49.78 RCW). Furthermore, Washington law provides for double damages and attorney fees to enforce the payment of wages. Chapters 49.48, 49.52 RCW.
In light of the Legislature's concern for the health and welfare of Washington's workforce, we rely on the DOL's general "salary basis" test and utilize this definition to examine the seven factors below which are dispositive in determining whether Alliant preserved the putative class representatives "exempt" status under the MWA. Nevertheless, except as specifically referenced below, we do not adopt all DOL regulations promulgated under the authority of the FLSA or under federal case law relating to this issue.
Issue 2: Based on the undisputed facts of this case, did the employer preserve the putative class representatives' "exempt" status under the MWA?
Subject to certain exemptions, the MWA's general rule requires an employer to pay its employees for time worked in excess of 40 hours per week at a rate of one and one-half times their hourly rate of pay. Chapter 49.46 RCW. Although an employer can assert its employees qualify under an exemption from this general rule, the employer bears the burden of proving this "exempt" status. Banks v. City of North Little Rock, 708 F.Supp. 1023, 1024 (E.D.Ark.1988) (citing Knecht v. City of Redwood City, 683 F.Supp. 1307, 1310 (N.D.Cal.1987)). Exemptions from remedial legislation, such as the MWA and FLSA, are narrowly construed and applied only to situations which are plainly and unmistakably consistent with the terms and spirit of the legislation. Knecht, 683 F.Supp. at 1310.
With this standard in mind, we review seven of Alliant's admitted policies and practices to determine whether the MWA's salary basis test was met.
1. Time Recording Requirements.
Requiring employees to record hours worked serves many valuable functions in the workplace, without causing harm to the fundamental principle of salaried employment. We therefore hold that time recording requirements do not violate the MWA's "salary basis" test. Alliant did not violate the MWA by requiring this practice.
2. Set Workday Schedule Requirements.
There are many legitimate reasons why a business or professional organization would want its salaried employees to be present during its business hours, including the desire to have those employees available to customers, management, and co-workers. Nonetheless, requiring work by salaried employees during certain hours of operation, which conveniently adds up to 40 hours, could simply be a subterfuge for hourly employment. We therefore hold that requiring salaried employees to work set schedules established by management does not per se violate the MWA's "salary basis" test, but may be considered as a factor in determining the true nature of the employment arrangement, whether salaried or hourly. Alliant did not violate the MWA by requiring management approved schedules. However, when this factor is viewed in connection with Alliant's other policies and practices, this court is persuaded that the actual employee arrangement was hourly.
3. Calculating "Exempt" Employees' Pay by Hourly Rates.
Having personnel records that translate monthly salaries into hourly rates of pay may be a useful tool for employers for many legitimate reasons, including client billing, financial information analysis, and fringe *588 benefit calculations. As a result, the MWA is not violated by calculating "exempt" employees' compensation using an hourly rate and including this hourly rate in personnel records. In this case, Alliant did not violate the MWA by calculating and recording hourly rates.
4. Weekly Hourly Quotas.
Requiring employees to work a weekly quota of 40 or more hours is generally inconsistent with salaried employment. "Salary is a mark of executive status because the salaried employee must decide for himself the number of hours to devote to a particular task. ... [T]he salaried employee decides for himself how much a particular task is worth, measured in the number of hours he devotes to it." Brock v. Claridge Hotel & Casino, 846 F.2d 180, 184 (3d Cir.1988); see also Thomas v. County of Fairfax, 758 F.Supp. 353 (E.D.Va.1991). While it is reasonable for an employer to expect that a full-time salaried employee's work-related responsibilities will occupy a normal workweek, employers should not be permitted to impose a rigid workweek hour requirement with pay deductions as a consequence for failure to meet such a quota. Because we find below that Alliant engaged in such a practice, Alliant's rigid requirement of hourly quotas, together with its disciplinary "docking" practices, violated the MWA.
5. Requiring Employees to "Make Up" for Deficiencies in Hourly Quotas.
Requiring employees to "make up" the difference between the time worked and the expected workweek is inconsistent with salaried employment. Whether this factor contributes to the loss of "exempt" status depends, in part, on the method of "make up": (1) whether additional hours of work are required; (2) whether time is deducted from comp time accounts; or (3) whether time is deducted from accrued vacation time accounts. For example,
a. "Make up" through working additional hours may be repugnant to salaried employment, depending on the expectations of the employer. This practice should be looked at in the context of the entire employment arrangement.
b. Allowing salaried employees to accrue comp time for hours worked in excess of an expected workweek is purely a voluntary practice by the employer under the MWA. Under the 1995 amendment to the MWA, paid overtime or comp time for work in excess of forty hours per week cannot be considered as a factor in determining whether an employee is "exempt." Since the employer is not obligated to provide comp time when workweek expectations are exceeded, logic would suggest that the employer may deduct from accrued comp time when its workweek expectations are not met.
c. "Make up" from vacation time is inconsistent with salaried employment and is the most akin to "docking" of any of the "make up" practices. In Abshire v. County of Kern, 908 F.2d 483, 487 n. 3 (9th Cir.1990), the court said "a strong argument can be made that even if deductions were required only from fringe benefits such as leave time, and not from base pay, the affected employees would still not qualify [as exempt employees]."
We hold that requiring "make up" from comp time does not violate the MWA. We further hold that while requiring "make up," absent "docking," does not per se violate the "salary basis" test under the MWA, it may be considered in the context of the entire employment relationship to determine whether the employment is salaried or hourly. We find that Alliant's practices exceeded the permissible boundaries for "make up" and violated the MWA.
6. Discipline Plan Calling for Less Than a Full-Week Suspension.
Regardless of the number of days or hours worked, any discipline plan which sanctions an employee with an unpaid suspension of less than a week violates the "salary basis" test, defined by 29 C.F.R. § 541.118(a), because a salaried employee must be paid his full salary "for any week in which he performs any work." Therefore, Alliant's discipline *589 sanction plan is among the form of plans that violates the MWA.
7. Pay Deductions in Less Than Full-Day Increments for Partial Day Absences.
Making deductions in pay when employees fail to meet hourly work quota requirements is inconsistent with salaried employment. Federal law under the FLSA clearly prohibits this practice. 29 C.F.R. § 541.118(a). We therefore hold that it is improper under the MWA to "dock" employees' pay when they fail to meet hourly work quota requirements.
To make an overtime claim for improper "docking" under the FLSA, an employee's salary must be "subject to" improper deductions. This requirement flows from the prohibition in the FLSA "salary basis" test which states that an "exempt" employee's pay shall "not [be] subject to reductions because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.118(a) (emphasis added). An employee's salary is "subject to" reduction when there is (1) an employment policy that creates a "significant likelihood" of making partial day deductions, or (2) an "actual practice" of making deductions. Auer v. Robbins, 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997).
In the present case, Alliant's policies and practices were well known. Even employees who were not "docked" took special care to avoid sanctions arising from these policies and practices. For example, in August of 1994, Plaintiff Drinkwitz wrote a letter to Alliant's management complaining that he was being treated as an hourly employee because of the weekly hours quota. In the letter he stated, "These policies treat me as an hourly employee with an assigned workweek of 45 hours instead of the exempt, salaried position in which I am classified." CP at 743. We therefore conclude that because Alliant engaged in a wide-spread practice of improper "docking" extending over several years, the group of employees of which plaintiffs were a part were "subject to" this practice.
In sum, we find that when Alliant's policies and practices regarding plaintiffs are viewed in their totality, plaintiffs were not treated as "salaried" employees under the MWA.
Window of Correction
Despite Alliant's admissions, including its admitted practice of making 243 improper deductions from 54 of its Washington employees' pay during the relevant time period, Alliant claims it nevertheless preserved the "exempt" status of its employees. Alliant's position is that it properly took advantage of the available "window of correction" exception when it fully reimbursed those employees who suffered improper deductions. Based on Alliant's assertions, we address whether the "window of correction" principle recognized under the federal regulations is available under the MWA.
The FLSA regulations provide a "window of correction" exception under which a deduction not permitted by the FLSA's regulations may be corrected without loss of "exempt" status. Under the FLSA,
[w]here a deduction not permitted by these interpretations is inadvertent, or is made for reasons other than lack of work, the exemption will not be considered to have been lost if the employer reimburses the employee for such deductions and promises to comply in the future.
29 C.F.R. § 541.118(a)(6); see also Auer, 519 U.S. at 463-64, 117 S.Ct. 905.
Federal case law, however, on the "window of correction" exception is convoluted and complicated. See, e.g., Belcher v. Shoney's, Inc., 30 F.Supp.2d 1010 (M.D.Tenn.1998) (federal courts split on whether window of correction available to employers with actual practice of making deductions pursuant to established policy) (citing cases). Part of the debate centers around whether the language of the regulation should be read as conjunctive or disjunctive.
Alliant urges this court to adopt Davis v. City of Hollywood, 120 F.3d 1178 (11th Cir. 1997), and Arrington v. City of Macon, 973 F.Supp. 1467 (M.D.Ga.1997), which allowed deductions for multiple employees under circumstances where the improper deductions *590 were not inadvertent. Under these cases, any deductions made "for reasons other than lack of work" are allowed, whether inadvertent or not. See Davis, 120 F.3d at 1180-81; Arrington, 973 F.Supp. at 1474-75. To read "inadvertent" and "made for reasons other than a lack of work" as distinct, optional reasons to justify use of the "window of correction" exception, however, allows the exception to swallow the rule. This is illogical.
The MWA fails to provide a "window of correction" exception and no such exception has been recognized by prior Washington case law. Without clear federal guidance or guidance from our own Legislature, and in the exercise of judicial restraint, we find it appropriate to allow the Legislature to decide whether to adopt a "window of correction" exception. If the Legislature chooses to do so, it will have the opportunity to clearly detail the requirements necessary to qualify for that exception.

CONCLUSION
Using federal authority for general guidance to interpret the MWA's "salary basis" test, and when viewing the facts in the light most favorable to the nonmoving party, Alliant failed to satisfy its burden of preserving the putative class representatives' "exempt" status under the MWA. The case is remanded for further proceedings consistent herewith.
Based on our holding, plaintiffs are entitled to reasonable attorney fees in an amount to be determined by the Clerk of this court, pursuant to RCW 49.48.030 and RAP 18.1.
GUY, C.J., MADSEN, TALMADGE, and BRIDGE, JJ., concur.
SANDERS, J. (dissenting).
The majority errs in its application of the summary judgment standard to this case by basing its decision on inferences favoring the party seeking summary judgment (the plaintiff employees, Drinkwitz and Caproni) and by erroneously imposing a strict liability standard. Because this case is an appeal from an order of summary judgment we must construe all facts and inferences in favor of the nonmoving party (the defendant employer, Alliant), and because this statute is lifted from federal law it should be given a consistent construction.
There remains a genuine question of fact as to whether the wage deductions at issue in this case were intentional or, if not, whether Alliant is entitled to the benefit of the window-of-correction exemption to Washington's Minimum Wage Act, chapter 49.46 RCW (MWA). As the majority rejects the "window of correction" and whereas I would adopt it, and as this fact issue would preclude summary judgment in favor of the plaintiffs, I dissent from a result which denies the defense its day in court.
The summary judgment standard is set out in CR 56:
The [summary] judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
CR 56(c). It is the moving party that bears the burden of meeting this standard. Hash v. Children's Orthopedic Hosp. & Med. Ctr., 110 Wash.2d 912, 915, 757 P.2d 507 (1988). When applying this standard we are required to view the evidence in the light most favorable to the nonmoving party, and, if any inferences are to be made, we must also make those inferences in favor of the nonmoving party. White v. State, 131 Wash.2d 1, 9, 929 P.2d 396 (1997). When reviewing a case on appeal from a summary judgment order, we must be mindful that we are not charged with making factual findings, and we must be particularly careful to give deference to the position of the nonmoving party to avoid usurping the role of the fact finder. It follows that we must view the evidence and the inferences that can be drawn therefrom in the light most favorable to Alliant (the nonmoving party), and that we are not entitled to weigh the evidence. Fleming v. Smith, 64 Wash.2d 181, 185, 390 P.2d 990 (1964); No Ka Oi Corp. v. National 60 Minute Tune, Inc., 71 Wash.App. 844, 854 n. 11, *591 863 P.2d 79 (1993) ("[I]t is axiomatic that on a motion for summary judgment the trial court has no authority to weigh evidence or testimonial credibility, nor may we do so on appeal."). However the majority apparently does weigh the evidence to see if the employer has carried its burden of proof. Majority at 587 ("Although an employer can assert its employees qualify under an exemption from this general rule, the employer bears the burden of proving this `exempt' status.... With this standard in mind, we review seven of Alliant's admitted policies and practices to determine whether the MWA's salary basis test was met.").
The majority refuses to recognize that a window-of-correction exception applies to the MWA. Majority at 589-590. The majority rejects both the "broad view" of the window-of-correction adopted in Davis v. City of Hollywood, 120 F.3d 1178 (1997), cert. denied, 523 U.S. 1133, 118 S.Ct. 1827, 140 L.Ed.2d 963 (1998), and Arrington v. City of Macon, 973 F.Supp. 1467 (1997), as well as a narrower window-of-correction for merely inadvertent deductions. Majority at 589-590. The majority exercises "judicial restraint" in refusing to recognize this federal exception in Washington law, Majority at 590, principally because the federal case law on the window-of-correction is "convoluted and complicated," Majority at 589. However, we should not confuse "restraint" with abdication of our duty to protect the legal rights of all concerned.
To substantiate the suspected convolutions and complications in federal law, the majority references a split in authority in the federal circuits as to whether the language in 29 C.F.R. § 541.118(a)(6), viz.,
where a deduction not permitted by these interpretations is inadvertent, or is made for reasons other than lack of work, the exemption will not be considered to have been lost if the employer reimburses the employee for such deductions and promises to comply in the future[,]
should be read conjunctively or disjunctively. The majority thinks that to read this language disjunctively "allows the exception to swallow the rule," which is "illogical." Majority at 590.
However the plain language of 29 C.F.R. § 541.118(a)(6) ("or" as opposed to "and") supports the disjunctive reading, and the United States Supreme Court, whose construction is authoritative over any split in the federal circuits, interprets the language disjunctively. Auer v. Robbins, 519 U.S. 452, 463, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) ("[T]he plain language of the regulation sets out `inadverten[ce]' and `made for reasons other than lack of work' as alternative grounds permitting corrective action." (alteration in original)). See also Paresi v. City of Portland, 182 F.3d 665, 668 (9th Cir.1999) (citing cases). I agree with the Supreme Court's reading of the "plain language of the regulation," and as such I see the window-of-correction as neither convoluted nor complicated, nor would I refuse to recognize this same principle in Washington law.
The MWA was modeled after the federal Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201-219, Boykin v. Boeing Co., 128 F.3d 1279, 1282 (9th Cir.1997). Both state and federal statutes establish minimum wages and require payment of overtime for covered employees. RCW 49.46.020; RCW 49.46.130; 29 U.S.C. §§ 206-07. The "professional" exemption to the FLSA, and its accompanying regulations, is almost identical to the equivalent MWA's exemption and regulations. Compare 29 U.S.C. § 213(a)(1) (exempting "any employee employed in a bona fide executive, administrative, or professional capacity" as those terms are defined in regulations by the department of labor) with RCW 49.46.010(5)(c) (exempting "[a]ny individual employed in a bona fide executive, administrative, or professional capacity" as those terms are defined in regulations by the department of labor and industries); compare 29 C.F.R. § 541.3(e) (defining a "professional" employee for the purposes of 29 U.S.C. § 213(a)(1) as someone who is inter alia "compensated for services on a salary or fee basis") with WAC 296-128-530(5) (defining a "professional" employee for the purposes of RCW 49.46.010(5)(c) as someone who is inter alia "compensated for his services on a salary or fee basis"). Thus the MWA is "based upon" the FLSA, and therefore it is "appropriate and helpful to refer to *592 the approach used by the federal courts" whose analysis is "helpful" and "persuasive" even if not controlling on our interpretation. Chelan County Deputy Sheriffs' Ass'n v. Chelan County, 109 Wash.2d 282, 291, 745 P.2d 1 (1987) (When deciding whether on-call time is compensable under the MWA "it is appropriate and helpful to refer to the approach used by federal courts in deciding if on-call time is compensable working time under the federal Fair Labor Standards Act...."); cf. Xieng v. Peoples Nat'l Bank, 120 Wash.2d 512, 531, 844 P.2d 389 (1993) ("[I]n the absence of adequate state authority, federal authority is persuasive in interpreting [Washington's law against discrimination]."). See also Tift v. Professional Nursing Servs., Inc., 76 Wash.App. 577, 583, 886 P.2d 1158 (1995) ("[F]ederal cases and interpretations are deemed to be persuasive but not controlling upon Washington courts.") and id. at 583 n. 6, 886 P.2d 1158 ("[W]hile the Code of Federal Regulations can be helpful and persuasive, it is not binding on us."). It makes imminent sense to look to the substantially more developed body of federal law for guidance.
That is probably why, given the dearth of Washington authority on this issue, the majority turned to federal materials for its entire analysisthe window-of-correction portion, Majority at 589-590, notwithstanding. As the majority notes, regulations adopted by the Department of Labor under the FLSA have specifically defined the requirements of the "salary basis" test:
An employee will be considered to be paid "on a salary basis" within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to the exceptions provided below, the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked.
29 C.F.R. § 541.118(a) (emphasis added). Although the majority relies upon this regulation, it unfaithfully omits the italicized language specifically referencing and incorporating the window-of-correction exception. See Majority at 589-590 (partially quoting 29 C.F.R. § 541.118(a)). It is illogical to look to a federal regulation to establish the test for determining whether an employee qualifies as an exempt employee, but disregard the same regulation when determining whether an inadvertent deduction entirely destroys the professional exempt status. This regulation addresses the precise issue raised in this appeal:
[W]here a deduction not permitted by these interpretations is inadvertent, or is made for reasons other than lack of work, the exemption will not be considered to have been lost if the employer reimburses the employee for such deductions and promises to comply in the future.

29 C.F.R. § 541.118(a)(6) (emphasis added). The practical effect of the majority's arbitrary strict liability standard is that a single mistaken deduction by a payroll clerk destroys the employee's "professional" status under the MWA. Not only is that approach inconsistent with the federal regulation but it makes no sense: There is more to being a "professional" under the statute than the complete absence of clerical error by a pay clerk.
Significant differences between state statutes and federal statutes will render federal case law inapplicable in interpreting the state statute, cf. Martini v. Boeing Co., 137 Wash.2d 357, 372, 971 P.2d 45 (1999), but the practical converse of that principle is nearly identical, and parallel state and federal statutes should be construed in harmony, absent state authority to the contrary. Accordingly exceptions available under federal law, such as the window-of-correction, should be available under our state law, absent state authority to the contrary, of which there is none.
Thus, unlike the majority which takes a cafeteria approach to its use of federal materials, I would look to the clear guidance of 29 C.F.R. § 541.118(a)(6) and recognize a window-of-correction exception to the MWA as well. Accordingly I would allow Alliant the *593 opportunity to prove the deductions were inadvertent, were corrected, and thus preserve the exempt status of these professional employees.
Alliant's published policies clearly state salaried employees exempt from the MWA should not generally have their pay reduced if they work less than 40 hours per week. Clerk's Papers (CP) at 197 ("If time is to be taken off without pay by an exempt employee, the time report showing less than 40 hours charged must have a letter attached from management approving the deduction. The time report and the letter must be sent together to Payroll, otherwise, no deduction will be made."). In contrast, the pay of nonexempt (hourly) employees is automatically deducted for time reports showing less than 40 hours. CP at 201, 164, 241, 245.
The company's manager of human resources in Mukilteo stated in her declaration that she was aware of the difference between exempt and nonexempt employees but only became aware of deductions from exempt employee salaries around October or November of 1995. CP at 158. After learning of these deductions the manager promptly issued a memorandum to all managers advising the deductions were improper. CP at 158, 161. The manager then worked with Alliant's payroll manager to identify all employees who may have had improper salary deductions and to calculate the amount owed to each of them. CP at 158-59. As a result 54 employees were identified and all were reimbursed. CP at 165. These affidavits and Alliant's efforts to identify and reimburse all affected employees support the inference, contrary to that of the majority, that these deductions were inadvertent.
Because we are asked to review an order of summary judgment in favor of Drinkwitz and Caproni, we must make all inferences in favor of Alliant. Where the evidence is capable of supporting the inference that the deductions were inadvertent, we must make that inference. Of course that inference has legal significance only if we recognize a window-of-correction under the MWA, for which the majority would substitute strict liability. The more reasoned view would hold the summary judgment in favor of Drinkwitz and Caproni cannot be sustained, and, in consequence, the trial court's summary judgment order should be reversed with a remand for further proceedings.
JOHNSON, ALEXANDER, and SMITH, JJ., concur.
NOTES
[1] Plaintiffs' motion to strike Alliant's collateral estoppel argument regarding the Rhode Island federal court's decision, which was raised for the first time in Alliant's reply brief, is addressed in a separate order.
[2] This claim of inadvertence is disputed since the practices of the payroll clerk were the same as her predecessor who was employed in this position for 14 years, until April of 1995. However, for our purposes, we take the facts as alleged by Alliant.