# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| CATHLEEN ROBERTSON, SCOTT CASTONGUAY and ANDREA RAKER, for themselves, and for all others similarly situated,<br><br>     Appellants,<br><br>    v.<br><br>VALLEY COMMUNICATIONS CENTER,<br><br>     Respondent. | No. 80861-3-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

APPELWICK, J. — Employees of the VCC brought suit under the Washington Minimum Wage Act[1] alleging the VCC regularly required them to perform nine tasks prior to the start of their shift without pay. The trial court granted summary judgment that six of these nine tasks were not compensable work tasks or were otherwise de minimis. The trial court excluded a survey of class members and corresponding expert testimony as fundamentally flawed. The employees conceded that without the survey, they would be unable to prove damages and could no longer sustain their suit. VCC brought a motion for summary judgment on that basis, which the trial court granted. We affirm.

FACTS

Valley Communications Center (VCC) is a regional 911 center that provides 24 hour emergency communication services to south King County. The appellants

---

[1] Chapter 49.46 RCW.

are a class of employees in two positions at VCC: call receivers and dispatchers. Call receivers and dispatchers both work in a 70 foot by 79 foot open floor plan room at VCC called the "Com Room."

Call receivers receive incoming 911 calls, collect information from the caller, and determine which, if any, agencies should respond to the event. They input information into the computer aided dispatch (CAD) system, where it can be accessed by dispatchers and responding units. In order to perform these functions, call receivers log into the CAD system and a separate phone system. They then plug their issued headset into a workstation and press a button on the computer screen that allows them to begin taking calls. Call receivers' workstations are not assigned, they can sit at any open workstation.

Dispatchers use the information entered into the CAD system by call receivers to dispatch emergency services as needed. They use two way radios to communicate directly with units in the field. Dispatchers are assigned to specific consoles in the Com Room that dispatch for specific agencies (e.g., Auburn Fire Dispatch or Renton Police Dispatch). Each console must be continually staffed. So, outgoing dispatchers must brief incoming dispatchers on the activities open on the console. Incoming dispatchers can plug their headsets into the console while the outgoing dispatcher is still plugged in. Dispatchers must log in to the console and phone system. Because of the fluid nature of handoffs from one dispatcher to another, an incoming dispatcher could begin their shift utilizing the previous dispatcher's login and then switch to their own account after their shift starts.

2

VCC employees are paid hourly. But, their hours worked are tracked per shift, rather than per hour. Employees record their shift attendance by "hand punching" into the Com Room by placing their hand on a biometric reader and entering their employee code. At all times relevant to this litigation, the employees were allowed to hand punch in up to 30 minutes before the start of their shift and could hand punch out up to 15 minutes before the end of their shift. These periods are known as "gracing" periods.[2] Regardless of the precise time that an employee hand punches in or out during a gracing period, they are paid from their scheduled start time to their scheduled end time. If an employee is required to stay past their scheduled end time, they are paid based on a rounding rule to the nearest fifteen minute increment.

Employees are expected to be seated at their console and ready to begin work by one second past the top of the hour. In order to be ready at this time, employees may have to perform a variety of preparatory tasks. The employees allege that they are required to complete nine tasks prior to the start of the shift:

1. Gathering/assembling guidebooks/resource materials;

2. Signing up for breaks;

3. 'Hand-punching' into computerized attendance/payroll system;

4. (For Dispatchers): obtaining console assignment;

5. Locating ergonomic chair and ergonomic carpel board, and/or any ergonomic equipment;

6. Logging into phone and computer systems;

---

[2] The preshift gracing period was changed from 30 minutes to 5 minutes during the course of litigation.

7. Plugging headset and headset jack into console;

8. Reviewing clearing messages from the CAD system; and

9. (For Dispatchers): receive briefing from the outgoing Dispatcher.

The employees brought suit alleging the requirement violated the Washington wage payment and collection law (WPCL), chapter 49.48 RCW, and Washington Minimum Wage Act (MWA), chapter 49.46 RCW.

Both sides moved for summary judgment. The employees sought a ruling that VCC had actual or constructive knowledge of their uncompensated work, and that VCC was liable for double damages because it willfully withheld their wages. VCC sought a ruling that the nine tasks were not compensable work, or, in the alternative, were not recoverable under the de minimis doctrine. It also sought a ruling that it was not liable for double damages.

The trial court denied the employees' motion for double damages. But, it found that VCC had knowledge of employees' presence on campus prior to their shifts though the use of the hand punching system. It granted partial summary judgment for VCC, finding it was not liable for double damages, but otherwise denied VCC's motion for summary judgment.

VCC then moved to depose 33 employees regarding their preshift routines. The trial court granted the motion over the employees' objection. During depositions, employees were questioned about their preshift routine as a whole, rather than the time it took to perform each individual task. At least one employee indicated it would not be possible to estimate the amount of time each task took as opposed to the whole preshift routine.

4

The employees moved for summary judgment that the nine preshift tasks were compensable work. VCC cross moved for summary judgment that the tasks were not compensable work. The trial court granted partial summary judgment for VCC and denied for the employees. It found that two of the tasks—signing up for breaks and locating ergonomic chairs and equipment—were not "work" because they were not in the control of or for the benefit of the employer. It ruled that six[3] of the nine tasks were not compensable under the de minimis doctrine. The trial court denied summary judgment on the remaining three tasks: (1) gather/assemble guidebooks/resource materials, (2) review/clear messages from the CAD system, and (3) (for dispatchers) receive briefing from outgoing dispatcher.

The employees enlisted an expert, Dr. Bernard Siskin. Siskin and his colleague Dr. Susanne Shay, developed a survey to be sent to class members to determine how much time they spent on the remaining preshift tasks. The survey begins by informing class members of its purpose:

> This form is being sent to you to collect certain information needed for the lawsuit Robertson v. VCC, regarding tasks that you may perform prior to the start of your shift at VCC from March 17, 2013 to the present. You are receiving this form because you are a member of the Class.

---

[3] (1) Signing up for breaks, (2) hand punching into the computerized attendance/payroll system, (3) (for dispatchers) obtaining a console assignment, (4) locating an ergonomic chair and an ergonomic carpel board, and/or any ergonomic equipment, (5) logging into the phone and computer systems, and (6) plugging the headset and headset jack into console.

The survey then asks two questions, one about the three remaining preshift tasks, and one about the dismissed six tasks:

> Question 1:  While your arrival times may have changed over your time employed at VCC, during the period from March 17, 2013 until the present, or if no longer employed at VCC - March 17, 2013 until the end of your employment date - looking back on your typical routine, what would you estimate has been the average total time you spent per shift doing the following tasks:
>
> 1. Gathering/assembling guidebooks/resource materials;
> 2. Reviewing/clearing messages from [the] CAD system; and
> 3. (For Dispatchers): receive briefing from the out-going Dispatcher.
>
> . . . .
>
> Question 2: And what would you estimate the average total time per shift you have spent doing the following tasks.
>
> 1. Signing up for breaks;
> 2. "Hand-Punching" into computerized attendance/payroll system;
> 3. (For Dispatchers): obtaining console assignment;
> 4. Locating ergonomic chair and ergonomic carpel board, and/or any ergonomic equipment;
> 5. Logging into phone and computer systems;
> 6. Plugging headset and headset jack into console.

(Emphasis in original.)

VCC enlisted its own expert, Dr. Robert Palmatier, who prepared a critique of the survey.  He argued that the questions were significantly unclear because the questions ask for time spent "per shift" rather than "preshift."  He argued that some respondents would believe they were being asked to provide the amount of time spent on these tasks during their entire shift, rather than prior to the start of the shift only.  In support of this theory, he pointed out that 18 percent of survey respondents had given time estimates for the amount of time they spent on preshift

6

tasks that exceeded the amount of time that they were in the building prior to their shift.

VCC moved exclude the survey and Siskin's conclusion drawn therefrom, or, in the alternative, to conduct a Frye[4] hearing. It also moved to allow Palmatier to testify at the Frye hearing and, if necessary, at trial. The trial court granted the motion to exclude the survey and Siskin's opinions. It found that the survey was so fundamentally flawed that any testimony derived from it would be misleading and confusing to the jury. It based its decision on the use of "per shift" rather than "preshift" language in the questions, and the fact that some respondents had provided answers in excess of the total amount of time they were in the building prior to their shift. The court also denied VCC's motion to allow Palmatier to testify as moot in light of the exclusion of Siskin's testimony.

The employees conceded to the trial court that, without the survey, they would be unable to prove class wide damages on the remaining three preshift tasks. They conceded this was so because the witnesses on their witness list were not representative of the class, and those who were deposed were asked only to provide an estimate of all nine tasks, rather than just three of the nine. Based on these concessions, VCC moved for summary judgment to dismiss claims based on the remaining three tasks. The trial court granted the motion.

The employees appeal. VCC cross appealed, but later withdrew that appeal.

---

[4] Frye v. United States, 293 F. 1031 (D.C. Cir. 1923).

DISCUSSION

The employees assign three errors. First, they argue the trial court erred in granting partial summary judgment that six of the nine preshift tasks are not compensable work or are de minimis. Second, they argue that the trial court abused its discretion in excluding Siskin's survey and his opinions drawn therefrom. Last, they assert that the trial court erred in granting summary judgment that VCC was not liable for double damages under RCW 49.52.070(2).

I. Dismissal of Six Preshift Tasks

The employees argue that the trial court erred in granting partial summary judgment dismissing six of the nine preshift tasks. The trial court determined that two of those six—signing up for breaks and locating ergonomic chairs and equipment—were not "work" because they were not within the control of or for the benefit of the employer. It further found that all six tasks were not compensable under the de minimis doctrine.

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. Stevens v. Brink's Home Sec., Inc., 162 Wn.2d 42, 46-47, 169 P.3d 473 (2007). The moving party bears the initial burden of showing an absence of an issue of material fact. Young v. Key Pharm., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989). The nonmoving party must then set forth specific facts showing that there is a genuine issue of fact for trial. Id. at 225-26.

We review summary judgment decisions de novo, engaging in the same inquiry as the trial court. Volk v. DeMeerleer, 187 Wn.2d 241, 254, 386 P.3d 254 (2016).

A. Tasks That do not Meet the Definition of "Work"

The trial court found that two of the nine preshift tasks were not "work" within the meaning of the MWA: signing up for breaks and locating ergonomic chairs/equipment.

The MWA requires employees to be compensated for all hours worked. RCW 49.46.020, .130. Hours worked includes any time an employee is "authorized or required by the employer to be on duty on the employers premises or at a prescribed work place." WAC 296-126-002(8). Time spent conducting preparatory tasks is considered hours worked. WASH. DEP'T OF LABOR & INDUS., ADMIN. POLICY ES.C.2, at 8 (rev. Sept. 2, 2008).[5] Compensable preparatory tasks are those which are "integral or necessary to the performance of the job."[6] Id. When an employee does not have control over when and where preparatory activities can be made, the activities are considered hours worked. Id.

VCC provides ergonomic equipment to employees. Employees and supervisors describe the selection of chairs and use of ergonomic equipment as a matter of preference. Employees point to no specific facts that establish the use of ergonomic equipment was "integral or necessary" to the completion of the job.

---

[5] http://www.lni.wa.gov/workers-rights/_docs/esc2.pdf

[6] Both parties rely on this policy to determine whether preparatory tasks are compensable. An agency policy can be useful in determining the meaning of statutory terms. See generally Stahl v. Delicor of Puget Sound, Inc., 148 Wn.2d 876, 886-87, 64 P.3d 10 (2003); Richardson v. Dep't of Labor and Indus., 6 Wn. App. 2d 896, 909, 432 P.3d 841 (2018), review denied, 193 Wn.2d 1009, 439 P.3d 1069 (2019).

The employees point to no evidence that VCC required employees to use this ergonomic equipment or that an employees were ever disciplined for not using ergonomic equipment.

The employees instead point to the VCC standard operating procedures, policy no. 300, which requires employees to be fully prepared to start their shift at one second past the start of their shift. But, that policy does not set out specific requirements for what preparations must occur. It does not require the use of ergonomic equipment. The employees also point to negative employee evaluations they received if they did not arrive at the facility with enough time to complete preshift tasks and be ready to begin work at their scheduled time. But, the negative comments the employees point to do not reference the inability to secure ergonomic equipment, rather they reference the inability to promptly begin work at the scheduled time. None of these comments indicates that utilizing ergonomic equipment is a job requirement.

But, at least one of those negative reviews specifically references the inability to sign up for breaks prior to the start of a shift. And, positive evaluations specifically praise employees for arriving with enough time prior to their shift to sign up for breaks. Additionally, a 2007 memorandum from VCC supervisors to employees confirms that employees are expected to sign up for breaks "before [the employee] sit[s] down or at the next earliest convenience." At least one employee indicated that if he did not sign up for a break slot prior to his shift, he would ask a supervisor to assign him a break slot. Some supervisors and

employees indicated that employees are able to sign up for breaks after the start of their shift. But, at least one trainer indicated that employees are not permitted to sign up for breaks after the start of their shift. The record supports that training officers trained employees to sign up for breaks as a part of a preshift routine.

The employees adduced specific facts that showed that employees were trained to sign up for breaks prior to their shift and received negative performance reviews if they failed to do so. This created a reasonable inference that VCC exercised control over when signing up for breaks occurred. As the nonmoving party to VCC's motion for summary judgment, the employees are entitled to that inference. See Stevens, 162 Wn.2d at 46-47. VCC controls where this task must take place: employees sign up for breaks on a "break board" on VCC's campus. It cannot be reasonably contested that signing up for breaks is necessary or integral to completion of the job. Breaks are required by WAC 296-126-092.

Viewing the facts in the light most favorable to the employees, there remains a genuine issue of material fact that signing up for breaks is integral or necessary for the completion of the employees' jobs, and that VCC controls where and when the task must occur.

While there is some evidence in the record that VCC did not require employees to sign up for breaks prior to the start of their shift, this fact is not dispositive. Employers are required to compensate employees for any time "authorized or required" not just the work it requires. RCW 49.46.020, .130; WAC 296-126-002(8). This includes "all work requested, suffered, permitted, or

11

allowed." ADMIN. POLICY ES.C.2, at 1. The employees' evidence that they were trained to sign up for breaks prior to their shift creates a reasonable inference that they were authorized to do so.

Viewing the facts and reasonable inferences in the light most favorable to the employees, a genuine issue of fact exists as to whether time employees spent signing up for breaks was "hours worked." The trial court erred in granting VCC's motion for summary judgment on that issue. But, the employees did not succeed in creating an issue of material fact regarding whether time spent gathering ergonomic equipment was "hours worked." Employees adduced no specific facts that the use of such equipment was integral or necessary to the performance of their jobs. The trial court correctly granted summary judgment on that issue.

### B. The De Minimis Doctrine

The employees argue that the trial court erred in dismissing six tasks under the federal de minimis doctrine. They argue this is so both because Washington courts have not adopted the de minimis doctrine and because the court incorrectly applied the doctrine to the facts of this case. We need not reach the way in which the trial court applied the de minimis doctrine because we are not persuaded the Washington courts have adopted the de minimis standard for MWA claims.

The MWA requires employees to be compensated for all hours worked. RCW 49.46.020; .130. Its federal counterpart, the Fair Labor Standards Act (FLSA) contains a similar requirement. 29 U.S.C. § 206. But, federal courts have adopted the de minimis rule, which makes otherwise compensable work time

12

outside of a scheduled shift noncompensable. Lindow v. United States, 738 F.2d 1057, 1062 (9th Cir. 1984). To determine when the doctrine applies, courts consider (1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of additional work. Id. at 1063.

VCC has cited to no substantive state authority that adopts the de minimis doctrine to the MWA.[7] We are aware of one instance where this court has been asked to so apply the de minimis doctrine. We declined the invitation: "[W]e are aware of no state authority that applies the de minimis rule, and the State has shown no compelling reason to apply such a rule." Davis v. Dept. of Transp., 138 Wn. App. 811, 820, 159 P.3d 427 (2007).

VCC argues that Administrative Policy ES.C.2, at 4 "applie[s] or endorse[s]" the de minimis doctrine for Washington wage claims. It does not. The policy uses the words de minimis once, as an adjective in a description of a hypothetical situation where an employee would be entitled to compensation for drive time between their home and a first drive site. Id. That alone does not substantively or

---

[7] VCC cites to three Washington cases that it purports to apply an "equitable de minimis doctrine as part of common law." None of these cases concern either the MWA, FLSA, or unpaid wages. See In re Bartel v. Em't Sec. Dep't, 60 Wn.2d 709, 712, 714, 375 P.2d 154 (1962) (referring to de minimis rule to assist in defining "self-employed" for purposes of RCW 50.20.080, Employment Security Act); Lang v. Dep't. of Labor & Indus., 35 Wn. App. 259, 262-63, 665 P.2d 1386 (1983) (using "de minimis" adjective to describe the benefit an employer receives from an employee leaving work early while interpreting the Industrial Insurance Act, Title 51 RCW); Reynolds v. Hancock, 53 Wn.2d 682, 684, 335 P.2d 817 (1959) (describing damages in a contract case as "de minimus non curat lex").

impliedly adopt, endorse, or apply the federal de minimis doctrine to Washington wage claims.

Nor has VCC cited state authority for the standard that they purport governs applicability of FLSA case law to interpretation of the MWA: that FLSA case law should be applied unless the MWA "expressly differs." VCC's citation to Drinkwitz v. Alliant Techsystems, Inc. reveals the correct standard: "Because the MWA is based upon the FLSA, federal authority under the FLSA often provides helpful guidance. However, the MWA and FLSA are not identical and we are not bound by such authority." 140 Wn.2d 291, 298, 996 P.2d 582 (2000). The MWA is to be liberally construed in favor of employees to effectuate the legislative intent to protect wages and assure payment. Int'l Ass'n of Fire Fighters, Local 46 v. City of Everett, 146 Wn.2d 29, 35, 42 P.3d 1265 (2002). If federal case law does not advance this intent, there is no requirement to apply that case law simply because the MWA does not "expressly" differ. See Drinkwitz, 140 Wn.2d at 298 (Washington courts are not bound by FLSA case law when interpreting the MWA). Adoption of the de minimis doctrine, which allows otherwise compensable work to be uncompensated, would not advance the legislature's intent to protect employee wages and assure payment. We decline to do so.

Summary judgment that time spent locating ergonomic equipment was not "hours worked" was proper, because the employees have not adduced specific facts showing that this was integral or necessary to the completion of their jobs. Summary judgment that time spent signing up for breaks is not "hours worked"

was improper, because genuine issues of material fact remain as to the extent to which VCC controlled when and where this task took place. Summary judgment that all other tasks were not compensable was improper, because Washington has not adopted the federal de minimis standard for claims under the MWA.

II. Damages Survey

Employees argue that the trial court abused its discretion in excluding Siskin's survey and opinions drawn therefrom. The trial court concluded that the surveys were inadmissible under ER 403 and ER 702. ER 403 allows the trial court to exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury. ER 702 governs expert opinion testimony. It allows admission of expert testimony if it will assist the trier of fact to understand the evidence or to determine a fact in issue. Id.

We review the trial court's exclusion of expert testimony for an abuse of discretion. Philippides v. Bernard, 151 Wn.2d 376, 393, 88 P.3d 939 (2004). An abuse of discretion exists if the decision is manifestly unreasonable or based on untenable grounds or reasons. Mayer v. Sto Indus., Inc., 156 Wn.2d 677, 684, 132 P.3d 115 (2006).

The trial court's decision rested on its view that the survey and Siskin's opinions from it were not helpful to the jury and would confuse them because "he asked the wrong question." This is not manifestly unreasonable. The distinction between "preshift" and "per shift" is a central issue in this case: employees cannot

15

recover for tasks performed during their shift because they have already been compensated for that time.

The employees argue that VCC presented no evidence that the survey was confusing to respondents. But, VCC submitted expert analysis showing that 18 percent of survey respondents gave impossible answers to the survey (i.e., that they spent more time on the nine tasks than they spent in the building prior to their shift). This is strong evidence that a sizable number of respondents believed that they were being asked about time they spent on the tasks during the entirety of their shift, rather than before their shift. This called into question the reliability of the survey instrument.

The employees argue that the wording of the questions goes to weight rather than admissibility. They argue that because surveys are a well-established scientific technique, the trial court should have allowed the jury to weigh questions about the quality of the survey. They concede that Washington courts have not developed a specific jurisprudence on how admissibility of surveys are to be addressed. They argue that the trial court should have adopted federal jurisprudence on the issue. They cite to cases from the Ninth Circuit standing for the proposition that "[t]echnical inadequacies in [a] survey, including the format of the questions or the manner in which it was taken, bear on the weight of the evidence, not its admissibility." Keith v. Volpe, 858 F.2d 467, 480 (9th Cir. 1988); Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgm't, Inc., 618 F.3d 1025, 1037-38 (9th Cir. 2010)).

16

Where, as here, Washington evidence rules mirror their federal counterparts, courts may look to federal case law interpreting federal rules as persuasive authority in interpreting our own rules. In re Det. of Pouncy, 168 Wn.2d 382, 392 n.9, 229 P.3d 678 (2010). The trial court was therefore free to rely on these cases as persuasive authority, but was not required to.

Even so, the trial court's determination was not that there was a minor technical issue with the survey. Instead, the trial court found that the wording of the question was so flawed that the survey would be of no help to the jury. That decision is not manifestly unreasonable given the significant distinction between preshift and per shift time to the facts of this case.

Expert testimony is admissible only if it is helpful to the jury. ER 702. And, any evidence may be excluded if its probative value is outweighed by the substantial risk of confusing the jury. ER 403. Having determined the survey to be flawed to this level, the trial court's decision to exclude it and Siskin's corresponding testimony was not an abuse of discretion.

III. Dismissal was Proper

The trial court did not abuse its discretion in ruling to exclude Dr. Siskin's survey of class members or his conclusions drawn therefrom. The employee's conceded below that they would be unable to prove damages on anything less than the full nine preshift tasks. Because the trial court did not err in dismissing one of the nine preshift tasks—locating ergonomic equipment—the employees'

concession applies to the remaining eight tasks. The trial court did not err in dismissing the case.[8]

We affirm.

_Appelwick, J._

WE CONCUR:

_Brennan, J_     _Mann, C.J._

---

[8] Because we find dismissal of the case is appropriate, we need not address whether the trial court erred in finding VCC was not liable for double damages.