Jay WEBSTER;  Janet Webster, husband and wife and the marital community composed thereof, Plaintiffs–Appellants,

v.

PUBLIC SCHOOL EMPLOYEES OF WASHINGTON, INC., Defendant–Appellee.

No. 99–35085.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 5, 2001

Filed April 18, 2001

David Utevsky, Daniel L. Thieme, and Alan K. Willert, Foster, Pepper & Shefelman, PLLC, Seattle, Washington, for the plaintiffs-appellants.

Michael J. Killeen and Jeffrey B. Youmans, Davis Wright Tremaine LLP, Seattle, Washington, for the defendant-appellee.

Before: PREGERSON, THOMAS, and GOULD, Circuit Judges.

RONALD M. GOULD, Circuit Judge:

This case involves exemptions from state and federal overtime requirements for bona fide administrative employees. Jay Webster ("Webster") is a union field representative employed by the Public School Employees of Washington, Inc. ("PSE"). Webster negotiates collective bargaining agreements and handles grievances for "bargaining units" composed of local

school district employees. Webster claims overtime pay under the federal Fair Labor Standards Act ("FLSA") and the State of Washington's Minimum Wage Act ("MWA"). The district court ruled on summary judgment that Webster was exempt from both federal and state overtime protection. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm in part, vacate in part, and remand.

## FACTS AND PROCEDURAL HISTORY[1]

PSE is a labor union representing Washington state public school employees who are not teachers or supervisors. Its members, referred to as "classified" employees of school districts, include bus drivers, clerical support workers, food service workers, ground maintenance employees, and teacher aides. PSE divides the state into regional areas known as "zones." Each zone contains bargaining units represented by PSE. PSE employs twenty field representatives to provide contract negotiation and administrative services to the bargaining units.

Webster has been employed by PSE as a field representative since 1984. Webster represents about 1,200 school district employees in Zone 9, an area encompassing five counties in the Olympic Peninsula, and in one large bargaining unit outside Zone 9.

The bargaining units are self-governing entities formed pursuant to PSE state bylaws. The primary role of the bargaining unit is the negotiation and enforcement of collective bargaining agreements. The bargaining units include members of the

PSE union chapter and non-member fee-payers known as "objectors."

PSE's job description of field representative is a "highly responsible staff position that negotiates, administers, and enforces collective bargaining agreements for, and on behalf of, PSE members with school districts." The field representative "[r]epresents members on job related issues including grievances, disciplinary matters, and other situations involving wages, hours, and working condition disputes." He or she "[a]ssists chapters in formulating goals, objectives, and operating procedures within the parameters of state and local bylaws."

Field representatives are themselves represented by a union, the Public School Employees Staff Organization. Field representatives do not generally participate in planning or management for PSE and do not negotiate agreements to which PSE is a party. PSE has a separate "Executive Team" and "Supervisory Team," which make and administer policy.

Webster spends most of his time negotiating collective bargaining agreements that determine the terms and conditions of employment for bargaining unit members. Webster regularly meets with members of a unit's negotiating committee to draft agreement proposals. Webster explains agreement proposals to rank-and-file members of the bargaining unit and at times submits proposals to school districts. School districts are represented by officials, such as superintendents or personnel directors, or by outside professional negotiators who are generally attorneys. After Webster and his bargaining team have negotiated a tentative agreement with the

---

1. Because Webster appeals a summary judgment against him, we view the evidence in the light most favorable to Webster as the nonmoving party. *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir.1998). To the extent facts are disputed, for purposes of this appeal we view conflicts in the evidence in favor of Webster. *Behrens v. Pelletier*, 516 U.S. 299, 313, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996).

school district, Webster explains the agreement to bargaining unit members. Webster has authority to sign contract extension agreements, side letters, and interim agreements members have approved.

Webster's other main duty is handling bargaining unit members' grievances related to issues arising under the agreements. Webster acts as the members' advocate and representative through a review process that includes hearings before an employee's immediate supervisor, the school superintendent, and the local school board.

Webster is paid an annual salary of about $65,000 and expenses. Although Webster's hours vary from week to week, he presented evidence that he regularly works more than forty hours per week. Webster does some of his work at home, but spends most of the time on the road visiting the units he represents.

At least since 1995, PSE has required its field representatives to submit weekly timesheets showing the hours worked each day. If Webster works less than forty hours per week, PSE deducts or "docks" the deficiency, calculated in fifteen-minute increments, from his accrued sick leave and vacation time. Webster's sick leave has been docked many times for missing parts of work days without making up the time during the workweek. Under the collective bargaining agreement governing the terms of Webster's employment, unused vacation and sick leave can be "cashed out" by Webster at the termination of his employment or, under certain circumstances, during his employment.

Webster filed a complaint in the Superior Court of Washington for King County against PSE claiming overtime wages under the FLSA and the MWA. PSE removed the case to the United States District Court for the Western District of Washington, which had jurisdiction pursuant to 28 U.S.C. § 1331. PSE moved for summary judgment, arguing that Webster was a bona fide administrative employee and exempt from both the FLSA and the MWA overtime pay provisions. Webster filed a cross motion for partial summary judgment, arguing that he was not an exempt employee because: (1) he performs production, not administrative, work for both PSE and the bargaining units; and (2) his sick and vacation leave could be docked for absences of less one day and therefore he was not paid on a "salary basis" under the FLSA and the MWA.

The district court granted PSE's motion for summary judgment, rejected Webster's motion for summary judgment, and dismissed the case. The district court ruled that Webster performed administrative work for the bargaining units and also concluded that Webster was paid on a salary basis under both the FLSA and the MWA. Webster appeals.

**Standard of Review**

A grant of summary judgment is reviewed de novo. *Botosan v. Paul McNally Realty*, 216 F.3d 827, 830 (9th Cir.2000). Our review is governed by the same standard used by the trial court under Federal Rule of Civil Procedure 56(c). *Adcock v. Chrysler Corp.*, 166 F.3d 1290, 1292 (9th Cir.1999). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir.2000) (en banc).

**DISCUSSION**

Webster claims that PSE owes him overtime compensation under the FLSA and the MWA.

## I. The FLSA

We first address Webster's claim under the FLSA. The FLSA requires that employers ordinarily pay their employees time and one-half for work exceeding forty hours per work–week. 29 U.S.C. § 207(a)(1). The FLSA provides an exemption from overtime for persons "employed in a bona fide executive, administrative, or professional capacity" and grants the Secretary of Labor broad authority to promulgate regulations to "define[] and delimit[]" the scope of the exemption. 29 U.S.C. § 213(a)(1). An "employer who claims an exemption from the FLSA has the burden of showing that the exemption applies." *Donovan v. Nekton, Inc.*, 703 F.2d 1148, 1151 (9th Cir.1983) (per curiam). The FLSA "is to be liberally construed to apply to the furthest reaches consistent with Congressional direction. To that end, FLSA exemptions are to be narrowly construed against ... employers and are to be withheld except as to persons plainly and unmistakenly within their terms and spirit." *Klem v. County of Santa Clara*, 208 F.3d 1085, 1089 (9th Cir.2000) (internal quotation marks and citations omitted).

To prove Webster is exempt from overtime pay, PSE must establish that his employment meets the following requirements of the administrative exemption "short test" set forth in the Department of Labor ("DOL") regulations: (1) Webster is paid at least $250 per week; (2) Webster is paid on a "salary basis"; (3) Webster's work requires "the exercise [of] discretion and independent judgment"; and (4) Webster's primary duty consists of office "work

directly related to management policy or general business operations of his employer or his employer's customers." 29 C.F.R. § 541.2.

The first two parts of the short test are commonly referred to as the "salary basis test"; the last two parts are known as the "duties test."

The parties do not dispute that under the FLSA Webster's salary satisfies the first requirement of the short test and that Webster's work requires sufficient discretion and independent judgment to meet the third requirement. The parties dispute: (1) whether Webster's duties negotiating collective bargaining agreements and handling grievances satisfy the primary duties test; and (2) whether Webster is paid on a salary basis.

### A. Duties Test

Webster claims that his work with the bargaining units does not meet the primary duties test under the FLSA. We disagree.

To qualify for the administrative exemption, PSE must establish that Webster's primary duty "consists of ... [t]he performance of office or nonmanual work directly related to management policies or general business operations of his employer or his employer's customers." 29 C.F.R. § 541.2(a). We must give deference to DOL's regulations interpreting the FLSA. *Auer v. Robbins*, 519 U.S. 452, 457, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997); *Bratt v. County of Los Angeles*, 912 F.2d 1066, 1070–71 (9th Cir.1990).[2] We review

---

2. We also give deference to DOL interpretations of its own regulations. *Auer*, 519 U.S. at 461, 117 S.Ct. 905. The DOL has issued an opinion letter regarding the exempt status of field representatives employed by a labor organization that represents classified state employees. Labor Dept., Wage and Hour Division, Op. Ltr., WL 1002363 (Feb. 5, 1999). The letter advised that the particular field representatives were nonexempt, but did not address the primary duties issue. The letter based its conclusions on its opinion that the field representatives did "not require the consistent exercise of discretion and judgment as

the district court's interpretation of the FLSA regulations de novo. *Barner v. City of Novato,* 17 F.3d 1256, 1261 (9th Cir.1994).

The DOL has issued implementing regulations explaining the primary duties test:

(a) The phrase "directly related to management policies or general business operations of his employer or his employer's customers" describes those types of activities relating to the administrative operations of a business as distinguished from "production" or, in a retail or service establishment, "sales" work. In addition to describing the types of activities, the phrase limits the exemption to persons who perform work of substantial importance to the management or operation of the business of his employer or his employer's customers.

(b) The administrative operations of the business include the work performed by so-called white-collar employees engaged in "servicing" a business, as, for[ ] example, advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control....

(c) As used to describe work of substantial importance to the management or operation of the business, the phrase "directly related to management policies or general business operations" is not limited to persons who participate in the formulation of management policies or in the operation of the business as a whole. Employees whose work is "directly related" to management policies or to general business operations include those [sic] work affects policy or whose responsibility it is to execute or carry it out. The phrase also includes a wide variety of persons who either carry out major assignments in conducting the operations of the business, or whose work affects business operations to a substantial degree, even though their assignments are tasks related to the operation of a particular segment of the business.

29 C.F.R. § 541.205.

The parties agree that, for the purpose of the primary duty analysis, the bargaining units are PSE's "customers."[3] Webster urges that we apply the dichotomy between administrative work and production found in § 541.205(a) by looking to the "primary service goal" of the bargaining units to determine what constitutes production work. *Smith v. City of Jackson, Miss.,* 954 F.2d 296, 298 (5th Cir.1992) (examining the primary service goal of a municipal service agency to determine production work in the context of § 541.205). Because the primary service goal of the bargaining units is to secure collective bargaining agreements and Webster's primary duty is to negotiate the agreements, Webster argues that he performs production work, not administrative work, of the bargaining units. He further asserts that bargaining unit members who give services to the school districts are doing the production work of either the individual members themselves or the school districts, but not of the bargaining units.

required by the regulations." Here, Webster concedes that he exercises sufficient discretion and independent judgment to satisfy the exemption.

**3.** PSE does not contend that Webster's primary duty is the administrative work of his employer, PSE. Because we affirm the district court on the duties test as applied to the customers, we do not reach the issue whether Webster would qualify for the administrative exemption on the lesser standard advanced by PSE: if he performed "major assignments" of "substantial importance" to the management and business operations of PSE regardless of whether those assignments were his primary duty.

Construing the statutes and applicable regulations as a whole, Webster's position is unpersuasive. First, Webster's work satisfies 29 C.F.R. § 541.2, the primary regulation interpreting the exemption because it is "directly related to management policy or general business operations of ... his employer's customers," the bargaining units. The importance of the issues decided by the collective bargaining agreements and the procedures by which the agreements are negotiated place Webster's negotiations squarely within the scope of exempt administrative work.

This conclusion is supported by FLSA's regulations interpreting the primary duties test: (1) Exempt administrative operations "include work performed by so-called white-collar employees engaged in 'servicing' a business," including "advising the management, planning, [and] negotiating," 29 C.F.R. § 541.205(b); (2) [A]dministrative employees are "advisory specialists and consultants of various kinds," including "wage-rate analysts [and] tax experts," 29 C.F.R. § 541.205(c)(5); (3) Tax experts, labor relations consultants, and financial consultants are examples of bona fide administrative employees who can qualify as exempt if their work is directly related to the business operations of their employer's customers. 29 C.F.R. § 541.205(d).

This conclusion is also supported by a sensible application of the administrative work/production dichotomy. The purpose of the dichotomy is to clarify the meaning of "work directly related to the management policies or general business operations," not to frustrate the purpose and spirit of the entire exemption. If we were to accept Webster's position and view the negotiation of agreements as the bargaining units' production, then any work—including that of a president or CEO—for a legal entity that addresses primarily management or administrative concerns, such

as a corporate holding company, would be production. This would defeat the purpose of the administrative exemption.

Our view of the primary duties test is also consistent with our precedent. In *Bratt*, we examined the exempt status of probation officers whose primary duty was to "conduct factual investigations" and to make recommendations to the court on sentencing and pretrial detention. *Bratt*, 912 F.2d at 1067–69. We found the application of the dichotomy between non-exempt administrative work and exempt production work in § 541.205(a) to involve making a "somewhat strained" analogy between business and government. But we applied the distinction because the "general principles and rationales underlying the regulations [were] instructive" in resolving the issues of the case. *Id.* at 1070–71. We concluded that administrative work refers to "the running of a business" as opposed to "the day-to-day carrying out of its affairs." *Id.* at 1070. The district court correctly relied on *Bratt* to conclude that Webster was exempt because his primary duty of "contract negotiation" involves "advising the bargaining unit on how to conduct its business (in terms of hours, wages, and working conditions)" and is thus more analogous to administration.

Here, as in *Bratt*, the language of subsection (a) does not precisely fit because the business "product" is not a marketable good. However, Webster's proposed application of the dichotomy is not supportable because, by describing bargaining units solely as units of production, it would render the distinction between administrative work and production meaningless. Webster performs management work as his primary duty, and his work is administrative, allowing the bargaining unit members to produce services for the school districts. We hold that Webster's primary

duty is the administrative work of the bargaining units.

### B. *Salary Basis*

We now address whether PSE pays Webster on a salary basis as defined by the FLSA.

■ The FLSA requires that an exempt administrative employee be paid on a "salary basis." 29 C.F.R. § 541.2(e)(2). Webster receives a salary of $65,000 a year, which is paid in biweekly installments that are not dependent on the number of hours he works. If Webster misses part of a day, his sick leave or vacation allowance is docked in fifteen-minute increments. The FLSA regulation defines "salary basis" as follows:

> An employee will be considered to be paid "on a salary basis" within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.

29 C.F.R. § 541.118(a). The regulation also provides that "[d]eductions may be made, however, when the employee absents himself from work for a day or more for personal reasons, other than sickness or accident." 29 C.F.R. § 541.118(a)(2).

In *Abshire v. County of Kern*, 908 F.2d 483 (9th Cir.1990), we held that deducting an employee's salary for absences of less than one day violated the FLSA's salary basis test. *Id.* at 486. In dictum contained in a footnote, we added: "a strong argument can be made that even if deductions were required only from fringe benefits such as leave time, and not from base pay, the affected employees would still not qualify as 'salaried.' However, we need not decide that question here." *Id.* at 487 n. 3.

When the issue of deductions for partial-day absences from leave time was squarely presented to this court in *Barner*, which involved city employees, we explicitly rejected the *Abshire* footnote, holding that "amount" and "compensation" in the regulation refers to salary and therefore "a reduction in the paid leave time does not affect the Plaintiffs' status as salaried employees." *Barner*, 17 F.3d at 1261–62. The rule announced in *Barner* is not restricted to public employees and is controlling here.

PSE's deduction policy is equivalent to the policy discussed in *Barner*, with the exception that in *Barner* we did not consider the possibility of employees converting unused leave time to cash. In *Barner*, we stressed the distinction between deductions from base-pay salary and deductions from fringe benefits. *Id.* Because leave time is not salary, we conclude that the reasoning of *Barner* extends the rule permitting exemptions to situations where, as here, accumulated leave is convertible to cash.[4]

### C. *Conclusion*

Because Webster's employment meets both the primary duties test and the salary basis test under the FLSA, we hold that

---

4. Our conclusion is consistent with the DOL's position. Labor Dept., Wage and Hour Division, Op. Ltr. 1876 (Mar. 30, 1994); *see also Graziano v. Soc'y of the New York Hosp.*, 1997 WL 639026 (S.D.N.Y.1997) (deduction in accrued leave do not render employees nonexempt even where leave can be paid in cash); *Aiken v. County of Hampton, S.C.*, 977 F.Supp. 390, 396–97 (D.S.C.1997) (same).

Webster is exempt from federal overtime protection.

## II. The MWA

We next address Webster's exemption from overtime under the State of Washington's MWA. Washington State has statutory provisions for overtime and exemption for administrative work that parallel the FLSA. Wash. Rev.Code § 49.46.130 (overtime provision); Wash. Rev.Code § 49.46.010(5)(c) (exemption for work in a bona fide administrative capacity); Wash. Admin. Code § 296–128–520 (administrative exemption short test).

### A. Primary Duties Test

■ The primary duties prong of the MWA and the FLSA short tests are nearly identical. *Compare* Wash. Admin. Code § 296–128–520(1) *with* 29 C.F.R. § 541.2(a)(1). We have already concluded that under the FLSA Webster's primary duties were administrative. We need not conduct a separate analysis of the primary duties test under the MWA because: (1) the parties do not point to any authority interpreting the test differently under the MWA; and (2) Washington courts generally look to interpretations of the FLSA for guidance in interpreting the MWA where state law is lacking. *Drinkwitz v. Alliant Techsystems, Inc.*, 140 Wash.2d 291, 996 P.2d 582, 586 (2000); *Chelan County Deputy Sheriffs' Ass'n v. County of Chelan*, 109 Wash.2d 282, 745 P.2d 1, 6 (1987). For the reasons expressed above in assessing the FLSA, we conclude that Webster meets the primary duties test under the MWA. No state law or precedent suggests any different conclusion.

### B. Salary Basis

■ Webster's status as a salaried employee, however, may be different under the MWA than under the FLSA. The MWA parallels the FLSA in requiring that an exempt administrative employee be paid on a salary basis. *Compare* Wash. Admin. Code § 296–128–520(4) *with* 29 C.F.R. § 541.2(e)(2). However, the Washington State Supreme Court in *Drinkwitz* recently rejected our approach in *Barner* for the determination of salary basis status where employers deduct leave time for partial-day absences.

For the purposes of the administrative exception established by Wash. Rev.Code § 49.46.010(5)(c), the Department of Labor and Industries ("DLI") defines "administrative" employees as individuals compensated for services "on a salary or fee basis." Wash. Admin. Code § 296–128–520(4)(b). Neither the MWA nor any DLI regulation defines the term "on a salary or fee basis." *Drinkwitz*, 996 P.2d at 586.

The district court concluded that PSE's policy was consistent with payment on a salary basis. The court relied on the Washington State Legislature's enaction of an amendment to MWA declaring that "payment of compensation or provision of compensatory time off in addition to a salary shall not be a factor in determining whether a person is exempted under RCW 49.46.010(5)(c)." Wash. Rev.Code § 49.46.130(2)(a). The district court reasoned that because PSE's policy only affected non-salary benefits, the statutory change indicated that Washington courts would not interpret MWA to provide any protections beyond those afforded by federal law.

In *Drinkwitz*, decided after the district court's ruling, the Washington State Supreme Court reviewed an employer's policy to require employees to submit weekly timesheets. If the employee did not reach his or her weekly time quota, the employee

had to "make up" the deficiency by: (1) working longer hours in another week; (2) applying hourly credits from compensatory ("comp") time banks; or (3) deducting from earned vacations time. *Drinkwitz*, 996 P.2d at 585.

The court stated that the legislature's action was "of little consequence" because the legislature had failed to define "salary basis" in the MWA. *Id.* at 586. The court then looked to the federal regulation, § 541.118(a) and "narrowly appl[ied] this definition [to] render a result consistent with Washington's long and proud history of being a pioneer in the protection of employee rights." *Id.* The court stated that "except as specifically referenced below, [it did] not adopt all DOL regulations promulgated under the authority of the FLSA or under federal case law relating to this issue." *Id.* at 587. In light of the Washington State Supreme Court's ruling, we may not rely exclusively on federal precedent to interpret the MWA's salary basis test. Instead, we must consider standards set by *Drinkwitz* for this issue.

In *Drinkwitz*, the Washington State Supreme Court stated that "[r]equiring employees to 'make up' the difference between the time worked and the expected workweek is inconsistent with salaried employment. Whether this factor contributes to the loss of 'exempt' status depends, in part, on the method of 'make up.'" *Id.* at 588. The court then introduced a more detailed examination of the employer "make up" practices with the clause, "[f]or example" and reasoned: (1) "make up" through working additional hours "may be repugnant to salaried employment" and "[t]his practice should be looked at in the context of the entire employment arrangement"; (2) deducting from compensatory

time, the provision of which is not an employer obligation, is consistent with salaried employment; and (3) "'[m]ake up' from vacation time is inconsistent with salaried employment and is the most akin to 'docking' of any of the 'make up' practices." *Id.* In making this last point, the court quoted our footnote in *Abshire* that stated "a strong argument can be made that even if deductions were required only from fringe benefits such as leave time, and not from base pay, the affected employees" would not be paid on a salary basis. *Id.* (quoting *Abshire*, 908 F.2d at 487 n. 3).[5]

Finally, based on its reasoning the court held:

> We hold that requiring "make up" from comp time does not violate the MWA. We further hold that while requiring "make up," absent "docking," does not per se violate the "salary basis" test under the MWA, it may be considered in the context of the entire employment relationship to determine whether the employment is salaried or hourly. We find that [the employer's] practices exceeded the permissible boundaries for "make up" and violated the MWA.

*Id.* Thus, *Drinkwitz* holds that deductions from vacation leave alone are insufficient to violate the MWA's salary basis test without a consideration of the "context of the entire employment relationship." To assess the salary basis test in the context of Webster's entire employment relationship requires factual determinations that should be considered by the district court.

■ However, there is another issue. Vacation leave and sick leave both are potentially deducted under PSE's policy. But in this case, only Webster's sick leave

---

5. Of course, we subsequently rejected the *Abshire* footnote in *Barner*.

has been deducted. *Drinkwitz* analyzed vacation leave, not sick leave. Nevertheless, PSE's practice reasonably falls within its holding. As a matter of federal law, the "subject to" requirement of 29 C.F.R. § 541.118(a), under which certain practices are inconsistent with salary basis status, does not require an actual deduction but only an employment practice that creates a "significant likelihood" of making partial-day deductions. *Auer,* 519 U.S. at 461, 117 S.Ct. 905; *Klem,* 208 F.3d at 1090. The Washington State Supreme Court explicitly adopted this standard from *Auer* in *Drinkwitz. Drinkwitz,* 996 P.2d at 589. Because Webster contends, and PSE does not dispute, that PSE's policy calls for partial-day deductions of vacation leave as well as sick leave, the "subject to" requirement is met.

The Washington State Supreme Court's new standard for salary basis status, established in *Drinkwitz,* requires the district court to consider the possible deductions for vacation leave and actual deductions from sick leave "in the context of the entire employment relationship" to determine if Webster is on a salary basis.

### C. *Conclusion*

Webster's employment by PSE meets the primary duties test under the MWA, but we are not in a position to decide whether it meets MWA's salary basis test. We vacate the grant of summary judgment, and we remand to the district court to consider the application of *Drinkwitz.*

### III. CONCLUSION

We AFFIRM the district court's summary judgment for Webster on the FLSA claims, VACATE the judgment on claims brought under the MWA, and REMAND to the district court for further proceedings consistent with our opinion.

**AFFIRMED in part; VACATED in part; and REMANDED in part.**