[No. 72862-3.   En Banc.]
Argued November 7, 2002.     Decided January 9, 2003.

CERTIFICATION FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON IN

JAY WEBSTER, ET AL., *Plaintiffs*, v. PUBLIC SCHOOL EMPLOYEES OF WASHINGTON, INC., *Defendant*.

384

*Alan K. Willert* (of *Foster Pepper & Shefelman, P.L.L.C.*), for plaintiffs.

*Michael J. Killeen* and *Jeffrey B. Youmans* (of *Davis Wright Tremaine*), for defendant.

MADSEN, J. — The United States District Court for the Western District of Washington has certified three questions of law to this court pertaining to the Washington Minimum Wage Act (MWA), chapter 49.46 RCW. In particular, the district court requests clarification of whether a single improper deduction from an employee's salary precludes a finding that the employee is paid on a salary basis under the MWA, chapter 49.46 RCW; whether under *Drinkwitz v. Alliant Techsystems*, 140 Wn.2d 291, 996 P.2d 582 (2000), partial-day deductions from accrued leave banks are considered improper "docking" when required by an employer to cover absences during normal business hours; and whether accrued leave is "salary." The district

court has stayed the parties' cross-motions for summary judgment until this court answers.

## PROCEDURAL HISTORY

Defendant-Appellant Public School Employees of Washington, Inc. (PSE), is a labor union that represents certain public school employees in the state of Washington.[1] Plaintiff-Respondent Jay Webster is 1 of 20 field representatives employed by PSE who provide collective bargaining and contract administration services to the union's members.

In 1998, Webster originally filed suit in King County Superior Court against PSE for its failure to pay him time and a half overtime pay for hours worked over 40 per week in alleged violation of the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201-219 and the MWA, chapter 49.46 RCW.[2] PSE removed the case to federal court where it went before the Honorable Judge Lasnik of the United States District Court for the Western District of Washington. *Webster v. Pub. Sch. Employees of Wash., Inc.*, 45 F. Supp. 2d 823, 826 (W.D. Wash. 1998). After discovery, PSE moved for summary judgment dismissal on the grounds that Webster was an exempt administrative employee under both the FLSA and MWA. *Id.* at 824; 29 U.S.C. § 213(a)(1); RCW 49.46.010(5)(c). Webster sought partial summary judgment that he was not paid on a salary basis. *Webster*, 45 F. Supp. 2d at 826.

To qualify as an exempt administrative employee under federal and Washington law, an employee must meet both a "duties test" and a "salary basis test." 29 C.F.R. § 541.2 (elements of administrative exception); WAC 296-128-520 (same). The district court determined that Webster met the

---

[1] The federal district court has designated PSE as the appellant in this appeal.

[2] Both the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 207(a)(1), and the Minimum Wage Act (MWA), RCW 49.46.130, forbid employers to employ their workers in excess of 40 hours per week unless the employer pays one and one half times the employee's wage for those hours. Both laws, however, exempt workers employed in a "bona fide executive, administrative, or professional capacity" from the requirement. 29 U.S.C. § 213(a)(1); RCW 49.46.010(5)(c).

duties test under both federal and state laws and that he met the FLSA's salary basis test. *Webster*, 45 F. Supp. 2d at 825-26. The court also held that Webster was paid on a salary basis under the MWA for the same reasons it held that he was salaried under the FLSA. *Id*. at 826. The court based its conclusion on federal precedent because state case law was not on point. *Id*. at 826 (citing *Chelan County Deputy Sheriffs' Ass'n v. County of Chelan*, 109 Wn.2d 282, 291, 745 P.2d 1 (1987) (holding that state courts look to federal case law where state cases are lacking)). The district court granted PSE's summary judgment motion for dismissal of both the FLSA and MWA claims.

Webster appealed the district court's ruling to the Ninth Circuit Court of Appeals. The Ninth Circuit affirmed the district court's holding that Webster was administratively exempt and paid on a salary basis under the FLSA. *Webster v. Pub. Sch. Employees of Wash., Inc.*, 247 F.3d 910, 917 (9th Cir. 2001). The court, however, remanded the case back to the district court for consideration of the issue of whether Webster was paid on a salary basis under the MWA in light of *Drinkwitz*, 140 Wn.2d 291, which had been decided in the interim. *Webster*, 247 F.3d at 918-20.

On remand, the parties conducted additional discovery on the MWA "salary basis" issue and once again brought cross-motions for summary judgment. Judge Lasnik determined that certain questions of state law need to be answered before the court can rule on the motions for summary judgment. The district court has stayed the parties' motions until this court answers three certified questions of law regarding the salary basis test under the MWA.

With the assistance of counsel, the district court prepared a "Record for Purposes of Deciding Certified Issues" (certified record) which provides the nature of the case and the circumstances out of which the certified questions of law arose. In order to facilitate resolution of the legal issues certified to this court, the district court noted that the

certified record contains statements that may be oversimplifications of the actual facts.

## CERTIFIED RECORD

Webster is 1 of 20 field representatives employed by the labor union, PSE, who provide contract negotiation and administrative services to PSE's members. CR ¶ 1.[3] The field representatives are themselves part of a collective bargaining unit represented by a union, the Public School Employees Staff Organization (PSESO). CR ¶ 2. A collective bargaining agreement (CBA) negotiated by PSESO and PSE, together with PSE's policies and practices, governs the terms and conditions of the field representatives' employment. *Id.* The CBA sets the salaries for field representatives and provides that "[f]ield employees shall work as necessary to perform assigned duties. Such assigned duties shall be performed as nearly as possible within a forty hour work week, which may include Saturday and Sunday." *Id.*

Webster is generally paid in equal biweekly installments. CR ¶ 3. The number of hours he works varies from week to week, but he has always received his regular biweekly pay with one exception. *Id.* In August 1994, he was suspended without pay for three days for alleged insubordination. In January 1998, PSE fully reimbursed Webster for all the pay he lost as a result of the suspension. *Id.* Other than the 1994 suspension, there have not been any other deductions from Webster's biweekly pay. CR ¶ 4. There also is no evidence that any other PSE employee was ever suspended without pay for less than one week. *Id.*

Per the CBA, field representatives accrue sick leave and vacation time on a monthly basis which is tracked in separate "leave banks." CR ¶ 5. When employees use sick leave or vacation time, they report the amount of leave used on their weekly time and expense reports. *Id.* The amount of leave reported is then deducted from the appropriate

---

[3] "CR" refers to the certified record or more specifically the "Record for Purposes of Deciding Certified Issues."

leave bank, and employees receive monthly reports from PSE providing running totals of how much leave they have accrued, how much they have used, and how much they still have available. *Id.* Under certain circumstances and on certain occasions, the CBA allows employees to "cash out" accrued but unused sick leave and vacation time. *Id.*

Prior to September 2000, PSE required employees, including field representatives, to use sick leave and vacation time in partial-day increments to account for their time during normal business hours (i.e., 9:00 A.M. to 5:00 P.M., Monday through Friday). CR ¶ 6. PSE would then deduct from the employee leave banks in partial-day increments. *Id.* Consistent with then-existing policy, Webster was required to and sometimes did use and report sick leave and vacation leave in partial-day increments. CR ¶ 7. Webster had 79 partial-day deductions from his leave banks. *Id.* If Webster failed to account for his time during normal business hours, PSE wrote in and/or deducted the missing hours from his sick leave or vacation time accounts for him. *Id.*

Throughout his employment at PSE, Webster has used and reported sick leave only when he has actually been ill or attending to a family member who needed care. CR ¶ 8. Webster has also used and reported vacation time only when he has taken time off work and engaged in nonwork related activities. *Id.* Webster would not have reported vacation time in partial-day increments or in weeks where he had already worked 40 hours, however, except for PSE's requirement that he be available for work and account for his time, eight hours a day, five days a week, Monday through Friday. *Id.* Webster has been orally warned and criticized for not recording sick leave and vacation time, including partial-day increments, as required by PSE policies. *Id.* Webster testified that sometimes he worked less than 40 hours per week because his "assignment was light" and he did not have any pressing work to do. *Id.*

PSE does expect field representatives, such as Webster, to generally be available for work during normal business

hours (i.e., 9:00 A.M. to 5:00 P.M., Monday through Friday). CR ¶ 10. From time to time, PSE has issued oral and written directives to employees in this regard. *Id.* If the employee is not available during these expected times, PSE expects the employee to report sick leave or vacation time. *Id.* Field representatives are not held to an exact starting or ending time and may self-schedule meal and rest breaks. *Id.* If duties require significant work time during evenings or weekends, the employee may, with agreement of his or her supervisor, take time off during the normal workweek without being required to use accrued leave. *Id.*

No one at PSE has ever told Webster that if he fails to work a certain number of hours in a week and does not use his leave to make up the difference, his salary will be docked. CR ¶ 9. The district court does not know what would have happened if an employee who had run out of accrued leave had reported less than 8 hours of work in a particular day and/or 40 hours of work in a particular week. *Id.*

## CERTIFIED QUESTIONS

(1) Does a single improper deduction from an employee's salary (i.e., one unpaid suspension of less than one week) preclude a finding that the employee is paid on a salary basis under the MWA, chapter 49.46 RCW, or is it simply a factor to be considered in the context of the entire employment relationship? Does it make any difference if the improper deduction occurred outside the statutory limitations period?

(2) Under *Drinkwitz*, 140 Wn.2d 291, are partial-day deductions from accrued leave banks considered improper "docking" when required by an employer to cover absences during normal business hours (i.e., 9:00 A.M. to 5:00 P.M., Monday through Friday)?

(3) Is accrued leave "salary"? *Compare Abshire v. County of Kern*, 908 F.2d 483, 487 n.3 (9th Cir. 1990), *with*

*Barner v. City of Novato*, 17 F.3d 1256, 1261-62 (9th Cir. 1994).

## DISCUSSION

The certified questions above pertain to Washington's minimum wage and hour law, the MWA, chapter 49.46 RCW. The MWA generally requires employers to pay employees time and a half overtime pay for hours worked over 40 per week. RCW 49.46.130(1). The statute exempts certain types of employees from this general requirement and allows for them to be paid a fixed salary for all hours worked. RCW 49.46.130(2), .010(5).

At issue in this case is the exemption for "individual[s] employed in a bona fide executive, administrative, or professional capacity." RCW 49.46.010(5)(c). The Washington State Legislature has not provided specific standards or definitions by which to determine whether an employee works in such a capacity and, rather, has delegated the authority to "define and delimit" the terms to the Department of Labor and Industries (DLI). *Id.* Pursuant to its authority, the DLI has established criteria for determining whether an employee works in "a bona fide executive or administrative capacity." WAC 296-128-520(3)(a). An employee must meet both a "duties" test and a "salary basis" test in order to qualify as an exempt administrative employee.[4]

---

[4] WAC 296-128-520, in relevant part, provides:

The term "individual employed in a bona fide . . . administrative . . . capacity" in RCW 49.46.010(5)(c) shall mean any employee:

(1) Whose primary duty consists of the performance of office or non-manual field work directly related to management policies or general business operations of his employer or his employer's customers; or

(2) . . . .

(3) Who customarily and regularly exercises discretion and independent judgment; and

(a) Who regularly and directly assists a proprietor, or an employee employed in a bona fide executive or administrative capacity (as such terms are defined in this regulation), or

In this case, the Ninth Circuit has conclusively ruled that Webster satisfies the "duties" test for both Washington and the federal exemptions and the "salary basis" test for the federal exemption. *Webster*, 247 F.3d at 914-18. The remaining issue for the district court to determine is whether Webster satisfies the "salary basis" test under the MWA.

Neither the MWA nor the DLI regulations define "compensat[ion] . . . on a salary or fee basis." WAC 296-128--520(4)(a). However, we had the task of determining whether an employee was paid on a "salary or fee basis" in the case of *Drinkwitz*, 140 Wn.2d at 299. In *Drinkwitz*, a class of employees brought suit against their former employer, Alliant, to recover overtime pay, while Alliant claimed that the employees were exempt as "bona fide . . . professional[s]" under RCW 49.46.010(5)(c). *Id.* at 294-95. The issue was whether Alliant had compensated the employees on a salary or fee basis, thus preserving the employees' exempt status. *Id.*

We turned to federal law and regulations, since neither the Washington State Legislature nor the DLI offers guidance on what constitutes compensation "on a salary or fee basis" under the MWA. *Id.* at 299. The federal Department of Labor (DOL) regulations, pertaining to the FLSA, have generally defined "payment on a salary basis" as the following:

"An employee will be considered to be paid 'on a salary basis' . . . if . . . he regularly receives each pay period . . . a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of

(b) Who performs under only general supervision work along specialized or technical lines requiring special training, experience or knowledge, or

(c) Who executes under only general supervision special assignments and tasks; and

(4) Who does not devote more than 20 percent, or, in the case of an employee of a retail or service establishment who does not devote as much as 40 percent of his hours worked in the work week to activities which are not directly and closely related to the performance of the work described in paragraphs (1) through (3) of this section; and

(a) Who is compensated for his services on a salary or fee basis at a rate of not less than $155 per week exclusive of board, lodging, or other facilities . . . .

variations in the quality or quantity of the work performed. . . . [T]he employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked. This policy is also subject to the general rule that an employee need not be paid for any workweek in which he performs no work."

*Id.* (quoting 29 C.F.R. § 541.118(a)).

We applied the federal definition of "salary basis" to the term as used in the DLI regulations promulgated under authority from the MWA. We also adopted the federal test for determining whether improper deductions from an employee's base pay destroy an employee's salaried status. *Id.* at 300, 304-05 (citing *Auer v. Robbins*, 519 U.S. 452, 461, 117 S. Ct. 905, 137 L. Ed. 2d 79 (1997)). To destroy salaried status, an employee's salary must be "subject to" improper deductions, which occur "when there is (1) an employment policy that creates a 'significant likelihood' of making partial-day deductions, or (2) an 'actual practice' of making deductions." *Id.* at 304 (quoting *Auer*, 519 U.S. at 461). Otherwise, we made clear that except as specifically referenced we were not adopting, at that time, all DOL regulations promulgated under the FLSA or federal case law. *Id.* at 300.

Moreover, in *Drinkwitz*, we also announced additional considerations the court would take into account in determining whether an employee is exempt from the MWA as an "individual employed in a bona fide executive, administrative, or professional capacity." RCW 49.46.010(5)(c). We specifically examined the particular employment policies and practices affecting the employees within the context of the entire employment relationship.[5] *Drinkwitz*, 140 Wn.2d at 301-05.

---

[5] In *Drinkwitz v. Alliant Techsystems*, 140 Wn.2d 291, 996 P.2d 582 (2000), the court addressed seven pertinent policies and practices of the employer in considering whether the employees were exempt. *Id.* at 301-05. The policies and practices included:

1. A requirement that employees record their time and submit weekly reports.

2. A requirement that employees work the schedules established by their managers.

Certified Question 1

Does a single, improper deduction from an employee's salary (i.e., one unpaid suspension of less than one week) preclude a finding that the employee is paid on a salary basis under the MWA?

██ In *Drinkwitz*, we adopted and applied part of the federal definition of "salary basis" to the term as used in the MWA. *Drinkwitz*, 140 Wn.2d at 299-300; 29 C.F.R. § 541.118(a). The section of the federal definition adopted requires a salaried employee to be paid his or her full salary " 'for any week in which he performs any work.' " 140 Wn.2d at 304 (quoting 29 C.F.R. § 541.118(a)). While an improper deduction from an employee's pay violates the "salary basis" test, the mere finding of a violation does not necessarily destroy an employee's salaried status. An employee must establish that his or her pay is "subject to" improper deductions in order to establish that he or she is not paid on a salary basis. *Id*. This is the federal test set forth in *Auer v. Robbins* that finds an employee's salary "subject to" reduction when there is either (1) an " 'actual practice' " of making deductions or (2) an employment policy that creates a " 'significant likelihood' " of making salary deductions. *Drinkwitz*, 140 Wn.2d at 304 (quoting *Auer*, 519 U.S. at 461). The "subject to" test flows from the FLSA's "salary basis" test, stating that an "exempt" employee's pay shall

3. A practice of calculating and recording the monthly salaries of employees into hourly rates of pay.

4. A requirement that employees work a weekly quota of between 40 and 45 hours per week.

5. A requirement that employees "make up" the difference between the time worked and the expected workweek by one of the following:

    (a) working longer hours;

    (b) applying hourly credits from compensatory (comp) time banks; or

    (c) deducting from earned vacation time.

6. Creation of a discipline plan which allowed management to suspend employees for one or two days when hourly quotas were not met.

7. Employee pay deductions for employees who failed to meet their quota requirements of 40-45 hours per week.

*Id*. at 296.

" 'not [be] *subject to* reductions because of variations in the quality or quantity of the work performed.' " *Id.* (alteration in original) (quoting 29 C.F.R. § 541.118(a)).

Webster argues that a single, improper deduction from an employee's salary conclusively determines that the employee is not paid on a salary basis under the MWA exemption. His argument relies on our adoption of the federal definition of "salary basis" discussed above. He concludes that since the MWA does not provide a "window of correction" for an employer, as does federal law,[6] a single improper deduction from an employee's pay automatically destroys his or her salaried status.

PSE correctly contends that Webster's argument fails to address the "subject to" test for determining whether salaried status has been destroyed by improper pay deductions, and PSE counters with two arguments. First, PSE argues that a single, improper deduction does not render the employee "subject to" improper reductions because (1) a single reduction is not an "actual practice," and (2) the certified question presents no evidence of a policy that creates a "significant likelihood" that the employer will make salary deductions.

PSE refers to federal case law to support its argument that a single deduction from an employee's pay does not render the employee "subject to" an "actual practice" of salary reduction. *Drinkwitz*, 140 Wn.2d at 304 (citing *Auer*, 519 U.S. at 461). The federal courts have held that one or

---

[6] The FLSA regulations provide a "window of correction" exception under which a deduction not permitted by the FLSA's regulations may be corrected without the loss of exempt status. The regulations state:

where a deduction not permitted by these interpretations is inadvertent, or is made for reasons other than lack of work, the exemption will not be considered to have been lost if the employer reimburses the employee for such deductions and promises to comply in the future.

29 C.F.R. § 541.118(a)(6); *see also Auer v. Robbins*, 519 U.S. 452, 463-64, 117 S. Ct. 905, 137 L. Ed. 2d 79 (1997). This court determined that the federal case law on the "window of correction" exception is "convoluted and complicated." *Drinkwitz*, 140 Wn.2d at 305. Since the MWA fails to provide a "window of correction," and no such exception has been recognized by Washington case law, this court exercised judicial restraint and left it to the legislature to decide whether to adopt a "window of correction." *Id.* at 306.

two isolated, unpaid partial-week suspensions is not enough to establish an "actual practice" of improper pay deductions. *E.g., Auer*, 519 U.S. at 462 (one-time deduction in employee's pay not enough to meet "subject to" test); *Aiken v. City of Memphis*, 190 F.3d 753, 761-62 (6th Cir. 1999) (one improper suspension without pay does not amount to "actual practice"), *cert. denied*, 528 U.S. 1157 (2000); *Childers v. City of Eugene*, 120 F.3d 944, 947 (9th Cir. 1997) (one improper suspension of single exempt employee did not render employees nonexempt); *Ahern v. County of Nassau*, 118 F.3d 118, 121 (2d Cir. 1997) (one incident of improper pay docking insufficient to establish "actual practice"); *see also Block v. City of Los Angeles*, 253 F.3d 410, 422 (9th Cir. 2001) (six improper suspensions may not amount to "actual practice" demonstrating intention not to pay employees on a salary basis).

In *Drinkwitz*, the single case in which this court decided the issue of whether employees were "subject to" improper salary deductions, the employer had a policy of improper "docking" that was well known by its employees. *Drinkwitz*, 140 Wn.2d at 297. The practice was widespread over several years with 243 improper deductions occurring in 54 employees' pay over a three-year period. *Id*. We held that the employees were "subject to" the practice of improper docking of pay in that case. *Id*. at 305. Given our adoption of the federal "subject to" test and the strength of the federal case law interpreting "actual practice" to require more than a one-time deduction, we now hold that a single, improper deduction from one employee's pay is not an "actual practice" of improper pay deduction.

In the absence of actual pay deductions, the "subject to" test "requires a clear and particularized policy—one which 'effectively communicates' that deductions will be made in specified circumstances." *Auer*, 519 U.S. at 461. The United States Supreme Court explained that "[t]his avoids the imposition of massive and unanticipated overtime liability . . . in situations in which a vague or broadly worded policy is nominally applicable to a whole range of

personnel but is not 'significantly likely' to be invoked against salaried employees." *Id.* We hold that a single improper deduction from an employee's salary does not constitute a clear and particularized employment policy which effectively communicates that pay will be docked in certain circumstances.

Is a single improper deduction from an employee's salary simply a factor to be considered in the context of the entire employment relationship?

The district court phrases the first question as an "either-or" situation—either a single improper deduction precludes finding an employee is salaried or it is a factor to consider in the totality of the employment relationship. As discussed, evidence of a single improper deduction from one employee's pay does not render that employee "subject to" an actual practice of improper salary deductions. *Drinkwitz*, 140 Wn.2d at 304 (citing *Auer*, 519 U.S. at 461). Since the "subject to" test must be met in order for improper pay docking to destroy an employee's salaried status, unless the test is met, a single incident will have no effect on an employee's status.

This is not an either-or situation. If the threshold question of whether an employee is "subject to" improper docking is answered in the negative, evidence pertaining to improper pay deductions carries no weight in the court's analysis of whether an employee is exempt from the MWA as a salaried employee. A single deduction does not satisfy the "subject to" test; thus, it is not a factor for the court to consider.

Does it make any difference if the improper deduction occurred outside the statutory limitations period?

The district court also inquires whether it makes any difference that the improper pay deduction occurred outside the statutory limitations period. If the only evidence of improper pay docking is a single improper deduction from one employee's pay, the "subject to" test is not met. *Drinkwitz*, 140 Wn.2d at 304 (citing *Auer*, 519 U.S. at 461).

If the "subject to" test is not met, then it makes no difference when the deduction occurred because it is not a factor affecting an employee's salaried status.

### Certified Question 2

Are partial-day deductions from accrued leave banks considered improper "docking" when required by an employer to cover absences during normal business hours?

The district court asks whether, under *Drinkwitz*, partial-day deductions from accrued leave banks are considered improper "docking" when required by an employer to cover absences during normal business hours. PSE contends that our decision in *Drinkwitz* holds that partial-day deductions from leave banks are permissible and violate the salary basis test under the MWA *only* if they are used in connection with or as a substitute for improper deductions from pay. Webster counters that deducting from leave banks is per se improper and automatically destroys an employee's salaried status. Neither party correctly characterizes our holding in *Drinkwitz*.

In *Drinkwitz*, we not only applied the federal definition of "salary basis," 29 C.F.R. § 541.118(a), but also announced additional considerations for determining whether an employee is exempt from the MWA as "employed in a bona fide executive, administrative, or professional capacity." RCW 49.46.010(5)(c); *Drinkwitz*, 140 Wn.2d at 301-05. The *Drinkwitz* court examined seven policies and practices of the employer, Alliant, to assess whether the employer had preserved the employees' salaried status.[7] *Id.* One such factor considered was Alliant's policy of requiring employees to "make up" the difference between the time worked and the expected 40- to 45-hour workweek. *Id.* at 302-03. We remarked that such practice is "inconsistent with salaried employment," but "[w]hether th[e] factor contributes to the loss of 'exempt' status depends, in part, on the method of 'make up.'" *Id.* at 303. In that case, the

---

[7] *See supra* n.5.

employer required employees to "make up" hours by either working longer hours, applying hourly credits from compensatory time banks, or deducting from earned vacation time. *Id.*

We addressed each practice individually, but of relevance to this case is our discussion of the employer practice of deducting from earned vacation time. We stated that deducting time from leave banks is inconsistent with salaried employment, and the practice is "the most akin to 'docking' of any of the 'make up' practices." *Id.* We supported our sentiment with a footnote from the Ninth Circuit stating that "a strong argument can be made that even if deductions were required only from fringe benefits such as leave time, and not from base pay, the affected employees would still not qualify as [exempt employees]." *Abshire v. County of Kern*, 908 F.2d 483, 487 n.3 (9th Cir. 1990).

■ Our final holding on the practice was that, in the absence of docking from an employee's pay, requiring "make up" through additional hours or deductions from leave time does not per se violate the "salary basis" test under the MWA. *Drinkwitz*, 140 Wn.2d at 303. The court, however, should consider the practice "in the context of the entire employment relationship" to determine whether the employee is exempt from the MWA as a "bona fide executive, administrative, or professional" employee. *Id.*; RCW 49.46.010(5)(c). Thus, our holding in *Drinkwitz* directly answers question 2.

## Certified Question 3

Is Accrued Leave "Salary"?

The district court lastly asks whether accrued leave is "salary" and cites to a comparison between two Ninth Circuit cases, *Abshire*, 908 F.2d at 487 n.3 and *Barner v. City of Novato*, 17 F.3d 1256, 1261-62 (9th Cir. 1994). It appears that the district court is seeking clarification as to whether this court specifically rejected the *Barner* holding when we favorably quoted the *Abshire* footnote in the

discussion of partial-day deductions from an employee's accrued leave in *Drinkwitz*. *Drinkwitz*, 140 Wn.2d at 303.

As previously discussed, we quoted the Ninth Circuit's footnote as support for our holding that deductions from accrued leave are a factor to consider in determining whether an employee is salaried or hourly. *Id*. (quoting *Abshire*, 908 F.2d at 487 n.3); *see also infra* p. 402. In *Abshire*, the Ninth Circuit decided the issue of whether employees whose salary was subject to deduction for absences of less than one day were paid on a "salary basis" according to the regulations implementing the FLSA. *Abshire*, 908 F.2d at 484. The court held that such practice destroys an employee's status as salaried. *Id*. at 487. In dicta, the Ninth Circuit made its comment that a strong argument could also be made that deduction only from fringe benefits, such as leave time, destroys salaried status. *Id*. at 487 n.3. However, the Ninth Circuit did not have to decide the accrued leave issue in that case.

Four years later in *Barner*, the Ninth Circuit was presented with the actual issue of whether deductions from accrued leave affect an employee's salaried status, and the court declined to follow the dicta from *Abshire*. *Barner*, 17 F.3d at 1261. Instead, in analyzing the federal definition of "salary basis," the court held that the statute's references to "amount" and "compensation" in the phrase, " '[a]n employee will be considered to be paid "on a salary basis" . . . if . . . he regularly receives . . . a predetermined *amount* constituting all or part of his *compensation*,' " refer only to cash or salary and not to all forms of compensation. *Id*. (emphasis added) (quoting 29 C.F.R. § 541.118(a)). As held, deductions from an employee's accrued leave time do not affect an employee's status as "salaried" as within the meaning of the FLSA. *Id*. at 1262.

Webster correctly points out that this court quoted the *Abshire* dicta with approval in *Drinkwitz* and with the full knowledge that the Ninth Circuit had chosen not to follow the *Abshire* comment in *Barner*. *Drinkwitz*, 140 Wn.2d at 303. Webster also notes that *Barner* was decided six years

prior to *Drinkwitz*, and this court was well aware that *Abshire* was no longer followed in the Ninth Circuit. Nonetheless, we did *not* adopt the *Barner* rule. Rather than holding an employer's policy or practice of making deductions from accrued leave as immaterial to whether an employee is exempt from the MWA, we held it as a factor to consider. *Id.*

PSE attempts to align *Drinkwitz* with the *Barner* decision by construing this court as holding that deductions from leave time can be used as circumstantial evidence of nonexempt status *only* if connected to a policy or practice of impermissible deductions from base pay. But, as discussed, *Drinkwitz* holds no such thing, and deductions from leave time are a factor to consider even in the absence of improper pay docking. *See infra* p. 402.

PSE also argues that paid leave is not part of an employee's salary, as defined by the federal "salary basis" test, and while it is part of an employee's overall compensation, it is a fringe benefit employees receive above and beyond their base pay. 29 C.F.R. § 541.118(a). PSE argues that since we adopted the federal definition of "salary basis" in *Drinkwitz*, salary does not include paid leave time for purposes of exemption from the MWA.

■ PSE is correct that we applied the definition of "salary basis," 29 C.F.R. § 541.118(a), to the term as used in the DLI regulations promulgated under authority from the MWA. *Drinkwitz*, 140 Wn.2d at 299-300; WAC 296-128-520. The definition of "salary" is not different under the MWA—it is the fixed, predetermined amount of compensation an employee receives. The test, however, for whether an employee is exempt from the MWA as a "bona fide executive, administrative, or professional" employee is broader than under the FLSA. RCW 49.46.010(5)(c); WAC 296-128-520. The MWA's test for exemption considers not only the federal "salary basis" test, but also allows the court to consider policies and practices that do not affect base pay. *Drinkwitz*, 140 Wn.2d at 301-05. The court determines whether an employer has preserved an employee's salaried

status by considering the entire context of the employment relationship and, consequently, deductions from accrued leave time may factor into the court's determination. *Id.*

Thus, in response to question 3, accrued leave is not "salary" as defined by federal regulations implementing the FLSA.

In sum, we answer the district court's certified questions as follows:

A single improper deduction from an employee's salary does not preclude finding that he or she is salaried because a single incident does not render the employee "subject to" improper pay docking. *Drinkwitz*, 140 Wn.2d at 304 (citing *Auer*, 519 U.S. at 461). Since a single improper pay deduction does not affect salaried status, it makes no difference when the statutory limitations period expired.

In the absence of deductions from pay, partial-day deductions from accrued leave banks are not per se a violation of the MWA but may be considered by the court in its determination of whether an employee is exempt from the requirements of RCW 49.46.130(2). *Drinkwitz*, 140 Wn.2d at 303.

Accrued leave time is not "salary" as defined by 29 C.F.R. § 541.118(a).

ALEXANDER, C.J., JOHNSON, SANDERS, IRELAND, BRIDGE, CHAMBERS, and OWENS, JJ., and SMITH, J. Pro Tem., concur.